239 F.3d 120 (2nd Cir. 2000)
 UNITED STATES OF AMERICA, Appellee,
v.
HARRY JAMES; GAIL OSBOURNE; MATTHEW BOWEN; MECCA HUFFLER; ANTHONY THOMAS; LAWANDA MORALDO, Defendants,
DEXTER FRANCIS, also known as Juncks, also known as Junks, also known as Coolman, also known as Jihad Muhammed, also known as Allen Dale Moffett, also known as Michael Roberts, also known as Wayne Hoyt, also known as Andre Huskin, also known as Francis Dexter, also known as Christian Dexter, Defendant-Appellant.
 Docket No. 00-1267
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: November 15, 2000
Decided: December 22, 2000
 
 1
 Appellant Dexter Francis asks that we reverse the decision of the United States District Court for the Southern District of New York (Dearie, Judge) denying his request for acquittal under Rule 29 of the Federal Rules of Criminal Procedure. He also challenges the district court's failure to instruct the jury in accordance with an agreed upon draft charge and the district court's refusal to consider his eligibility for a downward departure.
 
 
 2
 Affirmed.
 
 
 3
 MITCHELL A. GOLUB, Golub & Golub, LLP, New York, NY, for appellant.
 
 
 4
 BERNADETTE MIRAGLIOTTA, Assistant United States Attorney for Loretta E. Lynch, United States Attorney for the Eastern District of New York (Susan Corkery, Assistant United States Attorney on the brief), for appellee.
 
 
 5
 Before: CARDAMONE, CALABRESI, Circuit Judges, and HAIGHT, District Judge.*
 
 HAIGHT, Senior District Judge:
 
 6
 Dexter Francis appeals from a judgment of the United States District Court for the Eastern District of New York (Dearie, J.) denying his motion for acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure. Francis contends that the evidence underlying his conviction by a jury of racketeering, murder, conspiracy to commit murder, robbery, and weapons offenses was legally insufficient. Appellant also argues that the district court's failure to charge the jury precisely as spelled out in a draft charge merits reversal. Finally, he claims that the district court's refusal to consider granting a downward departure requires resentencing. We affirm.
 
 BACKGROUND
 
 7
 In 1997, a grand jury indicted appellant Dexter Francis on twenty-three counts of criminal activity arising out of his alleged leadership of a gang of drug dealers based in the Crown Heights section of Brooklyn, New York. Francis was tried before a jury in 1999 and was convicted of conspiracy to commit murder in connection with the shooting deaths of two rival drug dealers, Gerald Griffith (aka "Ruben"), and Ken Pierre, (aka "Big Youth"). Francis was also convicted of a substantive count of murder with respect to the shooting of Big Youth, various drug and weapons offenses, and conspiracy to commit robbery.
 
 
 8
 The bulk of the evidence against Francis was presented in testimony from cooperating co-defendants, who detailed the evolution of the alleged criminal enterprise as well as Francis's role in it. According to these witnesses, Francis's gang became involved in "turf wars" in the mid-90s which led to the deaths of Ruben and Big Youth. The witnesses expressly testified that Francis ordered the killing of both of these men.[1] In addition, the cooperating co-defendants implicated Francis in a scheme to rob a third drug dealer of approximately $15,000.
 
 
 9
 The defendant did not call any witnesses and did not testify on his own behalf. Instead, defense counsel's strategy was to attack the credibility of the government witnesses. To arm himself for that attack, defense counsel requested, and at the charge conference Judge Dearie agreed to give, the following charge with respect to the truthfulness of witnesses:
 
 
 10
 If you believe that a witness has given false testimony with respect to a material fact, you may disregard the testimony of the witness in whole or in part. A witness may have been mistaken or may have lied as to part of the testimony, and yet be accurate and truthful as to other parts.
 
 
 11
 This is a version of the so-called "falsus in uno, falsus in omnibus" charge.
 
 
 12
 In the wholly justified expectation that the trial judge would utter those words during the court's charge, defense counsel during his summation attacked the credibility of a principal government witness by arguing in part:
 
 
 13
 That was just another lie he made here on the stand, and when a witness lies in front of you on the stand, you can take that, you can consider it and if you feel it's appropriate you can say, You know what, I'm going to disregard everything this person says, because they are insulting me, they are lying to me right here on the stand.
 
 
 14
 But Judge Dearie did not include the falsus in uno instruction when he charged the jury. Counsel for Francis noticed the omission and complained about it when the trial judge, following the usual practice, asked counsel before the jury began deliberating if they had any objections to the charge as delivered. In the ensuing colloquy Judge Dearie acknowledged that he had omitted the instruction:
 
 
 15
 THE COURT: You asked for it, and I went back and read all the cases and learned something, frankly, that the charge is generally disfavored. I never was comfortable with that charge but I used to give it routinely.
 
 
 16
 I'm not blaming you but it caused me to do more research, and having done the research I was at liberty to remove it, and it is a disfavored charge, and for good reason.[2]
 
 
 17
 Counsel took exception to the omission of the falsus in uno instruction.
 
 
 18
 The jury began its deliberations. They sent the trial judge a number of notes requesting readbacks of testimony or asking questions. A note from one juror read:
 
 
 19
 Please clarify. If a juror believed that a witness lied on the witness stand, should the juror ignore the entire testimony from that witness?
 
 
 20
 Judge Dearie and counsel discussed the response that the judge should make to that question. During the colloquy, counsel for Francis noted that "I specifically on my summation said that if you think a witness lied about something, you can disregard his entire testimony. I think that's what the juror is latching onto." The judge responded in part that "if you are suggesting that you have been sort of sandbagged, that's pure bunk," recalled the jury, reread the juror's question, and answered that question as follows:
 
 
 21
 Well, ladies and gentlemen, that is really for the juror. And ultimately for the jury, to decide. That's not a question we decide. That's a question you individually as jurors and collectively as a jury decide. After considering all the evidence you decide on the basis of what you heard whether to believe in whole or in part the testimony of a particular witness. I really can't, that's your duty, that's your authority, and I think that's the best way to handle that.[3]
 
 
 22
 Eventually the jury returned its verdict convicting Francis.
 
 
 23
 After trial, Francis contended that the evidence underlying his conviction was legally inadequate, and he moved for acquittal under Federal Rule of Criminal Procedure 29(c).[4] Specifically, Francis claimed that the evidence could not support a conclusion that he was involved in Ruben's murder. Even if it did, he argued, the murder was an act of "personal revenge" in retaliation for Gordon Griffith's death, and was not in furtherance of the gang's drug trafficking activities. As a result, he urged that his conviction for conspiracy to commit murder in aid of racketeering (pursuant to 18 U.S.C. § 1959) be vacated. Francis also challenged the evidence of his involvement in Big Youth's death and in the $15,000 robbery, explaining that others were responsible for these crimes. The district court rejected all of these arguments and denied Francis's Rule 29(c) motion.
 
 
 24
 At sentencing, defense counsel requested that the district court depart downward from the applicable Sentencing Guideline in light of "significant trauma" experienced by the defendant during his youth and due to certain "severe mental afflictions" from which defendant suffered. The district court, however, concluded that under 18 U.S.C. § 1959(a)(1), defendant was subject to a mandatory minimum sentence of life in prison, and, therefore, determined that a downward departure was not permitted.
 
 
 25
 This appeal followed.
 
 DISCUSSION
 Sufficiency of the Evidence
 
 26
 "It is well established that a defendant who challenges the sufficiency of the evidence to support his conviction after a jury verdict bears a heavy burden. In reviewing such a challenge, an appellate court is required to view the evidence, whether direct or circumstantial, in the light most favorable to the government, crediting every inference that could have been drawn in its favor." United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997) (internal quotation marks omitted). Moreover, "the credibility of witnesses is the province of the jury and we simply cannot replace the jury's credibility determinations with our own." United States v. Khan, 53 F.3d 507, 514 (2d Cir. 1995). The evidence submitted to the jury in this case is more than adequate to support each of Francis's convictions; and there is no basis whatever for us to disturb the jury's assessment of the credibility of the cooperating witnesses. Acquittal under Rule 29 is, therefore, not appropriate.[5]
 
 Jury Instructions
 
 27
 The district court's omission from its charge of an instruction that the court told counsel would be given poses a question of greater substance.
 
 
 28
 Rule 30, Fed. R. Crim. P., entitles the parties to "file written requests that the court instruct the jury on the law as set forth in the requests," and then provides: "The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury" (emphasis added). This rule proceeds from basic concepts of fairness. "Such a procedure permits counsel to conform their arguments to the law as it will thereafter be presented by the judge to the jury. Clearly this purpose is frustrated if the judge, after informing counsel of his proposed charge, then changes the charge after the summations are completed." United States v. Lyles, 593 F.2d 182, 186 (2d Cir. 1979) (citations omitted). Construing the identical requirement in Rule 51, Fed. R. Civ. P., this court has very recently said: "The purpose of this rule is to allow both parties to mold their closing arguments to the points of law that will be explained in the final jury charge. Failure to abide by this mandate is reversible error where counsel is hindered in [his] ability to present summations which fully deal with the issues to be placed before the jury." Gordon v. New York City Bd. of Educ., (2d Cir. Nov. 6, 2000) (citations and internal quotation marks omitted).
 
 
 29
 A trial judge may violate Rule 30 in two ways: by giving instructions that he did not inform counsel he would give, or by not giving instructions that he informed counsel he would. This case involves a violation of the second type. It is potentially discomfiting for counsel when the judge does not give an instruction that counsel had every right to think would be given. In summations to the jury, counsel may make a variety of uses of language they understand the court will include in its charge. Counsel may say to the jurors "I expect the judge will instruct you that" (and then quote or paraphrase the anticipated instruction); or "listen carefully to the judge when he instructs you that" (and do the same); or, more subtly, quote the anticipated instruction verbatim and without attribution, perhaps hoping that when the jury hears counsel's words subsequently fall from the lips of the judge, counsel's entire summation may be enhanced by a reflected authoritative glow. All these artifices of advocacy turn to dust, with potentially deleterious effect upon counsel and client, if the judge does not say to the jury what he informed counsel he would say. Counsel quite naturally feel aggrieved; and thus Francis argues on appeal that his counsel relied upon a falsus in uno instruction in his summation "and presented it with the expectation that the court would provide the jury with an instruction that they may follow the defense's theory if so persuaded. By failing to give the expected instruction, the defendant's prime defense theory was effectively stripped." Brief for Appellant Dexter Francis at 48.
 
 
 30
 But Francis's argument implicitly acknowledges the rule in this circuit that "[a] violation of Rule 30 warrants reversal only...where the defendant can show that he was substantially misled in formulating his arguments or otherwise prejudiced." United States v. Adeniji, 31 F.3d 58, 64 (2d Cir. 1994) (citations and internal quotation marks omitted). The anticipated falsus in uno instruction upon which Francis's counsel relied told the jury that it "may disregard the testimony of the witness in whole or in part" if the jury believed the witness committed perjury during the trial (emphasis added). Judge Dearie's response to the inquiring juror during deliberations did not refer explicitly to trial perjury, but he did say that "[a]fter considering all the evidence you decide on the basis of what you have heard whether to believe in whole or in part the testimony of a particular witness" (emphasis added). When we consider that the trial judge gave this answer in response to a juror's specific request for guidance "[i]f a juror believed a witness lied on the witness stand," we conclude that Judge Dearie's answer conveyed the practical substance of a falsus in uno instruction, even though the judge did not use the traditional prefatory phrase.
 
 
 31
 It follows that the district court's omission from its charge of the anticipated falsus in uno instruction did not mislead Francis's counsel, substantially or otherwise, in formulating his argument to the jury. On the contrary: Judge Dearie's response to the juror's question was entirely consistent with the argument that counsel had actually made. Since Francis cannot show that the district court's violation of Rule 30 prejudiced his defense, the violation does not constitute reversible error. To hold otherwise would create a per se rule that any departure by a trial judge from the agreed text of a charge requires reversal. This court's cases require a showing of resulting prejudice. We adhere to that rule.[6]
 
 
 32
 While in the absence of prejudice the district court's Rule 30 violation does not require reversal, we take this opportunity to remind district judges that the best way to prevent the possibility of prejudice is to avoid violating criminal Rule 30 (or civil Rule 51) in the first place. That is not difficult. Typically, before counsel sum up the trial judge furnishes them with a draft charge reflecting all rulings made at the charging conference. All the judge then has to do is read the charge accurately. A previously unannounced departure by the judge from the written word is fraught with peril. The enormous complications arising out of the trial judge's charge with which this court had to deal in United States v. Zichettello, 208 F.3d 72 (2d Cir. 2000), principally resulted from crucial language that appeared "in the Court's Reporter's Charge and Real Time Charge but in neither the Draft Charge nor the Final Draft Charge." 208 F.3d at 90. If during the charging conference the judge has ruled upon the contents of the charge but not yet reduced those rulings to a definitive text, the judge must be careful not to depart from the rulings that were made. If the judge, as the result of further meditation or research, decides to alter the contents of a previously agreed upon charge, the judge must inform counsel accordingly before they sum up, so that counsel can be heard in objection or otherwise.
 
 
 33
 These common-sense suggestions should not be read as requiring reversal solely because a trial judge fails to follow them. We reiterate that resulting prejudice is a prerequisite to relief. Our purpose is to alert trial judges to a problem that can easily be avoided.
 
 Downward Departure
 
 34
 18 U.S.C. § 1959(a)(1) provides that individuals convicted of murder in aid of racketeering "shall be punished . . . by death or life imprisonment, or a fine under this title, or both." Defendant argues that this statute should be read to permit punishments of (1) death, or (2) life imprisonment, or (3) a fine in lieu of imprisonment, or (4) imprisonment and a fine. Because, on this reading of the statute, a prison term of zero years is possible, defendant urges that there is no mandatory minimum, and that a downward departure is permissible. Accordingly, he contends, the district court erred in refusing to consider his eligibility for such a departure.
 
 
 35
 Appellant's reading of the statute is, however, deeply problematic. It is hard to believe that Congress intended to permit a sentence of a fine with no prison time in cases of, for example, a drug-related murder such as the one at issue in this case.[7] The notion that the statute contemplates the imposition of a fine without imprisonment cannot be reconciled with the extremely harsh punishments - death or life imprisonment - otherwise available.
 
 
 36
 This is not the first time that we have been called upon to interpret a statute containing this kind of ambiguity. In United States v. Detrich, 940 F.2d 37, 39 (2d Cir. 1991), this court interpreted 21 U.S.C. § 960(b)(2), which requires a sentence of "a term of imprisonment of not less than 5 years . . . , a fine . . . , or both." In Detrich, as in this case, the defendant argued that the statute permitted imposition of a fine and no prison term. We rejected defendant's contention and held, instead, that the statute established a mandatory minimum sentence of 5 years: "Although this portion of the statute could have been more artfully drafted, the structure of Section 960(b)(2) makes it readily apparent that the district court must impose a prison sentence of five years." Id. In so holding, we noted that the statute imposed no minimum fine, and emphasized that if the defendant's construction of the statute were accepted, it would be possible for a judge to impose essentially no punishment whatever - a nominal fine and no prison time. See id. Because, in the court's view, "[a]ppellant offer[ed] no reason to believe that Congress intended this outcome," we declined to follow this reading of the statute. Id.
 
 
 37
 The Detrich court's analysis applies here as well.[8] We see no basis for concluding that Congress intended the unlikely result that, unless there were acceptable grounds for a downward departure, a judge was free to reject a death sentence or life imprisonment for a defendant convicted under 18 U.S.C. § 1959(a)(1), but only by sentencing that defendant to a fine without prison time. Accordingly, we affirm the district court's decision that 18 U.S.C. § 1959(a)(1) carries a mandatory minimum sentence of life in prison.
 
 CONCLUSION
 
 38
 The judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Charles S. Haight, Jr., of the United States District Court for the Southern District of New York, sitting by designation.
 
 
 [1]
 The testimony indicated that Ruben was killed in retaliation for the murder of Francis's partner Gordon Griffith, while Big Youth was killed for his complicity in events that led to the shooting of another of Francis's partners, Trevor John.
 
 
 [2]
 Judge Dearie did not reveal the source of his research. He may well have studied the current edition of Leonard B. Sand et al., 1 Modern Federal Jury Instructions, and in particular Instruction 7-17 dealing with "Trial Perjury." Earlier editions of Judge Sand's Instructions included a falsus in uno, falsus in omnibus instruction, but the current edition, published in 2000, withdraws the recommendation that the instruction be given. The discussion at pages 7-72, 73 notes that several other circuits have rejected the falsus in uno instruction as "inconsistent with life's experience," and that "none of the published circuit pattern instructions include a falso in unus instruction" (footnotes omitted). The current Treatise's discussion concludes:
 Given this strong trend to refrain from charging the jury on this issue, it is recommended that no instruction be given but rather that a general instruction on credibility be given and that this issue be left to the argument of counsel.
 Id. at 7-72. In this case we need not pass upon the merits of giving or not giving a falsus in uno instruction.
 
 
 [3]
 It will be observed that Judge Dearie's response follows the suggestion in the current edition of Sand's Instructions. See id. at 7-72.
 
 
 [4]
 At the close of the government's case, the defendant made a similar motion under Federal Rule of Criminal Procedure 29(a). That motion was denied.
 
 
 [5]
 With respect to defendant's contention that Ruben's murder was an act of personal revenge and was not done in aid of defendant's racketeering enterprise, we agree with the district court that "one of the motivations for [this murder] was tied to the association with the enterprise and the desire to maintain standing, if you will, in that . . . for lack of a better way of putting it, community." And this is sufficient, under our precedents, to support a conviction for conspiracy to commit murder in aid of racketeering. See United States v. Concepcion, 983 F.2d 369, 381 (2d Cir. 1992). Because we conclude that a jury could find that Ruben's murder was not only an act of personal revenge, but was, also, tied to Francis's racketeering activities, we express no views as to the applicability of § 1959(a)(1) when members of a criminal enterprise are enlisted solely to aid in an act of personal revenge. See United States v. Tipton, 90 F.3d 861 (4th Cir. 1996).
 
 
 [6]
 Gordon v. New York City Board of Education, No. 99-9503, furnishes an example, rare in our jurisprudence, of a district court's unannounced departure from an agreed charge leading to reversal. Plaintiff in Gordon, a Title VII case, alleged that the board of education retaliated against her for filing a discrimination action. During the charging conference prior to summations, the trial judge told counsel that the causal connection between plaintiff's action and the defendant board's allegedly retaliatory refusal to promote her was "the only question that's going to the jury." Plaintiff's counsel fashioned his argument to the jury accordingly. However, during the charge the judge, without previously notifying counsel (and erroneously in law), instructed the jury that plaintiff also had to prove that the board's agents "knew. . . that plaintiff had filed that lawsuit at the time when they took these adverse employment actions against her." Id. at 114. This court held that the trial judge violated civil Rule 51 by not informing counsel of that change in the charge, and that the violation required reversal:
 In this case, the district court not only failed to inform Gordon of its intended jury charge regarding the need to prove individual knowledge on behalf of the Board's agents, it had -- until the case was being submitted to the jury -- consistently stated that the knowledge element was not an issue and that Gordon's proposed jury instruction was correct. As a result, Gordon's counsel argued a theory to the jury that was diametrically at odds with the eventual instruction given by the court. This error was prejudicial, and therefore reversible error, because it destroyed counsel's credibility with the jury and Gordon's ability to direct the jury's attention to the appropriate evidence to decide her case.
 Id. at 118-19. We quote from Gordon at this length in order to emphasize the present appellant's inability to demonstrate a comparably sufficient degree of prejudice.
 
 
 [7]
 The government argues, in fact, that "a review of the legislative history reveals that Congress intended to impose the harshest penalty - death - for defendants convicted of murder in aid of racketeering." It is true that the legislative history reveals that murder in aid of racketeering was among many crimes with respect to which, in 1994, Congress made the death penalty available as a punishment. Still, the inference drawn by the government from this action, that life imprisonment must be the mandatory minimum sentence, and that a fine is an unacceptably lenient sentence for this crime, while reasonable, is not mandatory.
 
 
 [8]
 Defendant contends that the language of the statute at issue in Detrich is meaningfully different from the language of the statute before us. Specifically, 21 U.S.C. § 960(b)(2) provides for "not less than five years imprisonment, a fine, or both," while 18 U.S.C. § 1959(a)(1) requires "death or life imprisonment, or a fine, or both." (emphasis added). Francis urges that the presence of the disjunctive "or" in 18 U.S.C. § 1959 makes all the difference, i.e., that it establishes the possibility of a fine without imprisonment in this context even if such a possibility does not exist with respect to 21 U.S.C. § 960. We disagree.
 Under defendant's construction, if Taney said to Marshall - "you may go to Richmond, or Washington, or both" - then Marshall could choose to go to Richmond only, to Washington only, or to Richmond and to Washington. If, however, Taney said - "you may go to Richmond, Washington, or both" - then Marshall could go to Richmond only, to Richmond and to Washington, but not to Washington only. We see no reason to draw a distinction such as this one from the presence or absence of the word "or."