United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 7, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

03-10633
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LANA ST. MARTIN,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Texas, Dallas
Nos. 3:02-CR-175 and 3:01-CR-246

_____

Before REAVLEY, DAVIS AND WIENER Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:*

In this direct criminal appeal Lana St. Martin ("St.

Martin") challenges her conviction and sentence on a number of

grounds.  We find no merit to any of St. Martin's arguments and

AFFIRM.

I.

St. Martin was charged along with Anthony B. Benavides

("Benavides") and Elizabeth P. Johnston with conspiring to murder

---

*Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

John D. Johnston for the proceeds of a $500,000 life insurance policy to which Elizabeth Johnston was the primary beneficiary. The indictment also charged that, following the murder, Elizabeth Johnston obtained the proceeds of the policy fraudulently and transferred $289,000 of the proceeds to St. Martin and Benavides.

On the same day that the original indictment was filed, St. Martin, Benavides, and Robert Martinez were named in a separate indictment charging them with securities fraud, wire fraud, and engaging in monetary transactions involving property derived from unlawful activity. The indictment charged the defendants with providing fraudulent information to potential investors to entice them to invest money in Stadtt Media, L.L.C., in which the three defendants were officers.

The government moved to consolidate the two indictments for trial under Federal Rule of Criminal Procedure 13, on grounds that the counts "could have been joined in a single indictment" under Rule 8 of the Federal Rules of Criminal Procedure. In the certificate of conference, the Assistant U.S. Attorney represented that St. Martin's counsel had been consulted and did not oppose consolidation. The government provided the court a factual basis connecting the two cases.[2] The district court

---

[2]The government submitted the following factual synopsis of the two charges:

> [T]he government will present evidence that Benavides and St. Martin entered into a conspiracy to murder John D. Johnston with the objective to fraudulently obtain the proceeds from his life

agreed to try the cases together.

The matter went to trial before a jury, and St. Martin was convicted on all counts.[3] At sentencing, St. Martin moved for a downward departure from a mandatory life sentence based on her serious medical condition. The district judge denied the downward departure based on his belief that the court did not have the authority to depart below the statutory minimum sentence

---

insurance policy. Following his murder during May 1999, they received approximately $290,000 of the insurance proceeds which they divided between themselves. These facts form the gravamen of the charges in the [murder-for-hire] case. (Continued)

In the [securities-fraud] case, the government will present evidence that money obtained from the Johnston insurance policy was immediately used to establish Stadtt Media and carry on a fraudulent scheme to [i]nduce individuals to invest money with Benavides and St. Martin.. It was misrepresented to potential investors that...Benavides and St. Martin were wealthy and had obtained the money to sta[r]t Stadt[t] Media by selling a "dot-com" compa[n]y which they had started and made suc[c]essful. They also misrepresented their backgrounds and used the insurance proceeds as "flash money" to promote their image.

From an evidentiary standpoint, the two conspirac[ies] are closely connected and overlap. The proceeds from the murder were used to finance the fraud conspiracy. Moreover, evidence of their true background and source of their funds, the murder, will clearly be admissible in the fraud case to show the falsity of their representations regarding their prior success and background.

[3]On appeal, St. Martin has not challenged the sufficiency of the evidence to support her conviction nor has she challenged the government's summary of the evidence presented in the trial record. Thus, we will discuss the facts only as needed to address the issues presented on appeal.

for the offense.  The district court sentenced St. Martin to life

imprisonment on the murder-for-hire count and to 120 months

imprisonment for the securities-fraud count, with the sentences

to run concurrently.  St. Martin timely filed a notice of appeal,

raising a number of issues which we discuss below.


                              II.

     *A.  Consolidated Offenses*

     St. Martin first argues that the district court erred in

consolidating the securities-fraud charge with the murder-for-

hire charge for trial pursuant to Federal Rule of Criminal

Procedure 13.[4]  She contends both that the two charges cannot be

properly joined under Rule 13 and the substantive rules of

joinder found in Rule 8,[5] and, in the alternative, that joining

the offenses improperly prejudiced her case in violation of Rule

_____

     [4]Rule 13 of the Federal Rules of Criminal Procedure
provides:
          The court may order that separate cases be tried
     together as though brought in a single indictment or
     information if all offenses and all defendants could
     have been joined in a single indictment or information.

     [5]Rule 8 of the Federal Rules of Criminal Procedure provides
in pertinent part:
          **(a) Joinder of Offenses.**  The indictment or
     information may charge a defendant in separate counts
     with 2 or more offenses if the offenses charged...are
     of the same or similar character, or are based on the
     same act or transaction, or are connected with or
     constitute parts of a common scheme or plan.

                               4

14.[6]. She neither opposed the government's motion to consolidate the two indictments nor moved before trial to sever the two indictments.

Any form of joinder not explicitly permitted by the terms of Rule 8 is referred to as "misjoinder."[7] A defendant objects to "misjoinder" by filing a Rule 8 objection.[8] Because objections to misjoinder are "objections based on defects in the indictment," under Rule 12(b)(3)(B),[9] a defendant who fails to object to "misjoinder" prior to trial waives his objection

---

[6]Rule 14 of the Federal Rules of Criminal Procedure provides in pertinent part:

**(a) Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

[7]*See* 24 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 608.04[2] (3d. ed. 2004) (Any form of joinder not explicitly permitted by the terms of Rule 8 is "misjoinder.")

[8]*See* 25 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 614.02[1] (3d. ed. 2004) (If there is any question about the propriety of the joinder, the appropriate motion is one based on misjoinder pursuant to Rule 8.)

[9]Rule 12(b)(3)(B) of the Federal Rules of Criminal Procedure provides in pertinent part:

(**b) Pretrial Motions.**
**(3)Motions That Must Be Made Before Trial.**
**(B)** a motion alleging a defect in the indictment...

pursuant to Rule 12(e).[10]

Offenses properly joined under Rule 8 may still be challenged as "prejudicially joined" by use of a Rule 14 motion to sever.[11] Because the Rule 14 motion is listed as one of the motions that "must be brought before trial," it too can be waived. FED. R. CRIM. P. 12(b)(3)(D)[12]; FED. R. CRIM. P. 12(e).[13]

We must first determine the proper standard of review for St. Martin's joinder arguments. The government contends that no review is necessary because St. Martin invited any error that was committed. The government argues that the "certification of conference" that accompanied its motion to consolidate the cases demonstrates that the prosecutor conferred with defense counsel

---

[10]*See United States v. Mann*, 161 F.3d 840, 861-862 (5th Cir. 1998); 24 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 608.04[2] (3d. ed. 2004) (Objections on the ground of misjoinder...are based on a "defect in the indictment or information" within the meaning of Rule 12(b)(3)).

[11]*See* 25 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 614.02[1](3d. ed. 2004) (A motion for severance under Rule 14 will be considered only if the indictment or information complies with Rule 8.).

[12]Federal Rule of Criminal Procedure 12(b)(3)(D) provides in pertinent part:
   **(b) Pretrial Motions.**
      **(3) Motions That Must Be Made Before Trial.**
         **(D)** a Rule 14 motion to sever charges...

[13]Federal Rule of Criminal Procedure 12(e) provides in pertinent part:
         **(e) Waiver of a Defense, Objection, or Request.** A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c)...

who had no objection to trying the securities fraud and murder-for-hire charges together.  In addition, the government argues that, by suggesting at a status conference that the two charges be joined in one indictment, the defendant caused the two charges to be tried together.[14]

Our cases hold that a party may not "invite error and complain thereof."[15]  We therefore must decide whether St. Martin invited error in this case.  The "certification of conference" attached to the government's motion to consolidate the charges does not demonstrate invited error, but rather shows that the defendant failed to object to the charges being consolidated.[16] The same cannot be said for the pretrial conference, however, in which St. Martin's attorney affirmatively requested that the two charges be consolidated.[17]  Though St. Martin never expressly

---

[14]St. Martin did not address the issue of invited error in her briefs to this court or attempt to explain her attorney's suggesting to the court the idea of consolidating the murder-for-hire and securities fraud charges into a single indictment at the August 28, 2002, pretrial conference.

[15]*United States v. Baytank, Inc.*, 934 F.2d 599, 606 (5th Cir. 1991); *see also United States v. Solis*, 299 F.3d 420, 452 (5th Cir. 2002)([a] defendant cannot complain on appeal of alleged errors which he invited or induced...).

[16]The Certification of Conference provides:
    I have spoken to the attorneys of record for defendant St. Martin and can advise the Court that they *do not oppose* the requested transfer and *do not oppose* consolidation of these cases.  R. 3, 61. (Emphasis added).

[17]At the August 28, 2002, pretrial conference, Tom Mills, attorney for the defendant St. Martin, had the following exchange

7

requested that the two charges be tried together, a joint trial was the obvious consequence of counsel's request to have the charges consolidated. She therefore invited any potential joinder error in this case.

St. Martin also waived her ability to receive substantive relief from this court on her joinder arguments. As stated above, both Rule 8 objections to "misjoinder" and Rule 14 motions to sever for "prejudicial joinder" come within the scope of Rule 12(b)(3) and 12(e), and therefore must be filed before trial or are waived. In *United States v. Mann*, 161 F.3d 840, 862 (5th Cir. 1998), we held that when a party fails to file either a Rule 8 or Rule 14 objection before trial and fails to provide adequate justification, "we need not even address the merits of their argument."

In this case, St. Martin does not provide any excuse for her failure to object to the consolidation of the securities fraud

---

with the trial judge:

| Mr. Mills: | Would there be any benefit, and is it even possible, rather than have two indictments, which is I guess somewhat more prejudicial against the defendant than one indictment, is there any way that the securities counts could be put into your superceding indictment? |
| The Court: | So from your perspective you would rather have the one indictment and read all the different counts? |
| Mr. Mills: | Yes, I think so...It is a little bit unusual to have two, especially when you have a murder case and a securities fraud case. (R. 6, 6). |

8

and murder-for-hire offenses for trial.  She has therefore waived her objection and can get no relief from this court on this issue.

   B.   *Limitation on Cross-Examination of Benavides*

St. Martin next argues that the district court erred by not allowing her attorney to inquire on cross-examination into Benavides's desire to avoid a death sentence as motivation for assisting the government and testifying against her.  The district judge set guidelines for cross-examination in an oral ruling on the first day of trial.  R. 8, 106-110.[18]  During the hearing, the government argued that because the Attorney General had never approved the death penalty for Benavides, he never faced death as a possible punishment.  No evidence was presented at the hearing that Benavides believed that he would face the death penalty when he entered into plea negotiations and agreed to help the government.  The available evidence is to the contrary.  First, the plea agreement itself provides that

---

[18]The district court also reasoned that it did not want St. Martin to question Benavides regarding a potential death sentence because of the possibility that the jury might conclude that, because St. Martin and Benavides were charged with the same offense, St. Martin may face the death penalty if convicted.  The court appears to have been concerned that this would adversely affect the jury's ability to determine guilt or innocence in St. Martin's case.  St. Martin argues that these considerations are insufficient to limit her ability to fully cross-examine an adverse witness.  This argument might have some merit if there was any evidence that Benavides ever believed he was subject to the death penalty.  As stated above, no evidence supports this contention and therefore this argument must also fail.

9

Benavides faced a maximum penalty of life in prison. Second, at the hearing the district judge agreed with the government that it was his understanding that the Attorney General never agreed to allow prosecutors to seek the death penalty in Benavides's case. R. 8, 108. St. Martin never produced any evidence challenging any of these statements.

We review a district court's limitation on the scope of cross-examination for abuse of discretion.[19] Under Federal Rule of Evidence 611(a), the district court has the discretion to limit cross-examination subject to the Sixth Amendment. The record reveals that, except for prohibiting cross-examination on Benavides's desire to avoid the death penalty, counsel was given broad latitude to cross-examine Benavides, including all of the possible benefits he received from the plea bargain. Because the record supports the district court's conclusion that Benavides did not believe he faced the death penalty when he made his plea bargain, the district court did not abuse its discretion in the limit it placed on Benavides's cross-examination.

C.    *Admission of Character Evidence*

St. Martin next argues that the district court erred in admitting extrinsic act character evidence under Federal Rule of

---

[19]*See United States v. Alexius,* 76 F.3d 642, 644 (5th Cir. 1996).

10

Evidence 404(b).[20]  St. Martin concedes that she lodged no
objection to this evidence, and we are limited to plain error
review.[21]

We apply a two-pronged test to determine the admissibility
of evidence under Rule 404(b).  First, the evidence must be
"relevant to an issue other than the defendant's character."[22]
Second, the evidence must have probative value that is not
substantially outweighed by undue prejudice and must be
"otherwise admissible" under Rule 403.[23]

### 1.

St. Martin first challenges the district court's rulings
allowing several witnesses to testify about the numerous
expensive luxury items she demanded and purchased after the
murder and while Stadtt Media was being financed.  She argues
that this evidence improperly conveyed to the jury that she was

---

[20]Federal Rule of Evidence 404(b) provides in pertinent part:

> **(b)Other Crimes, Wrongs, or Acts.**-Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...

[21]*See United States v. Avants*, 367 F.3d 433, 446 (5th Cir. 2004).

[22]*United States v. Beechum*, 582 F.2dd 898, 911 (5th Cir. 1978)(en banc).

[23]*Id.*

11

greedy or "money grubbing."[24]  Testimony from employees of Stadtt

Media focused on St. Martin's use of funds from the company's

swindled investors.  She concedes that this testimony was

admissible to show that she was knowingly involved in the

fraudulent securities scheme, but argues it was unduly

prejudicial because it made her seem like a person more likely to

commit murder-for-hire.

St. Martin does not contest the fact that testimony from

Benavides regarding how she used the insurance money from the

murder was relevant to establish that she was a member of the

murder-for-hire conspiracy.  Thus, testimony regarding both her

use of the insurance proceeds and testimony regarding her use of

the investor funds are relevant to issues besides her character.

At trial, Benavides testified regarding St. Martin's desire

to use the murder proceeds to purchase expensive items and her

acquiring many of those items after collecting the insurance

money.  So, although the testimony from the Stadtt Media

employees may have added to the jury's perception of St. Martin

_____

[24]She specifically challenges virtually all of the testimony of Gary Stephens, an employee of Stadtt Media, who testified that St. Martin repeatedly sought to use the funds of Stadtt Media for personal purchases of automobiles and jewelry.  She also challenges the testimony of Jose Garcia, Benavides's hired bodyguard, who testified that he brought her money on several occasions and that he once took her shopping.  St. Martin also contends that the district court erred in admitting the testimony of James Wilson, a lawyer hired by Stadtt Media, who testified that she used investor funds to purchase numerous expensive personal items.

12

as a greedy person, given the bountiful evidence of her greed regarding both the murder and the securities fraud, the district court did not commit error -plain or otherwise- in admitting this testimony.

2.

St. Martin also asserts that the district court erred in admitting testimony that, after the murder, she wanted to purchase a handgun with a sound suppressor and bragged that she was familiar with how to use a handgun.  She contends that this testimony was unduly prejudicial character evidence seeking to show she had a propensity to commit murder.  We disagree.  This evidence is relevant to something other than her character: the evidence tended to establish her knowledge of how to operate a handgun, the same type of weapon used in the murder.  Further, any potential prejudice St. Martin suffered from the admission of this evidence does not substantially outweigh the high probative value of evidence showing that she was competent enough with handguns to use one to shoot John Johnston.  Thus, the district court did not err in admitting this testimony.

3.

St. Martin also argues that the district court improperly admitted evidence that she was a topless dancer.  We agree with the government that the district court did not err in admitting this evidence because the defense discussed St. Martin's working as a topless dancer in their opening statement as evidence that

13

she had lived in very difficult circumstances.

D.    *Bathroom Dash Testimony*

St. Martin next argues that the district court abused its discretion in allowing testimony from a police detective that she reacted with surprise and dismay and ran into the bathroom at the sight of a prosecution witness.  At trial, St. Martin objected that the testimony was irrelevant.  Her attorney elicited an admission from the detective on cross-examination that St. Martin may have run to the bathroom because she was physically ill.  Even if the admission of this evidence was error (which is doubtful), given the minor nature of this testimony in this eight-day trial, the admission of this evidence was harmless.[25]

E.    *Handwriting Testimony*

St. Martin also argues that the district court abused its discretion in admitting the testimony of a rental car agency manager that the writing on a notepad found in a car used by St. Martin and Benavides appeared to have been written by a female.[26]  St. Martin objected that the testimony was inadmissible lay

---

[25]*See United States v. Edwards*, 303 F.3d 606, 623 (5th Cir. 2002) (Erroneous admission of testimony does not warrant reversal because it amounts to harmless error.).

[26]The manager testified that the handwritten list contained an itemization of expensive items and their accompanying prices. For example, the list included $10,000 for surgery and $5,000 for a shopping spree.  The actual list was never put into evidence. R. 14, 711-712.  In his testimony, Benavides also recounted he and St. Martin's discussions regarding her intention to use the insurance money from the murder to purchase several expensive personal items.

14

opinion, arguing that the manager needed to be qualified as an expert to testify about the possible gender source of handwriting.

The court overruled St. Martin's objection after being satisfied that the government had properly laid the foundation that the manager's experience with signatures as a part of his everyday ten-year career in auto rentals made his ability to discern gender from handwriting proper lay opinion. This testimony was an unimportant part of this witness's contribution to this case. The manager also testified that he rented the car to St. Martin and Benavides, and that he found both of their driver's licenses in the center console when he repossessed the vehicle. This evidence firmly tied them to the vehicle used in the murder. We cannot say that the district court abused its discretion in admitting this evidence. Even if there was error in admitting this evidence, it was harmless error.[27]

### III.

St. Martin argues finally that the district court erred in denying her motion for a downward departure on the murder-for-hire count because the court mistakenly believed that it had no authority to depart below the minimum sentence of life in prison

---

[27]St. Martin also argues that, although the individual instances of evidentiary errors might be harmless, in the aggregate they amount to reversible error. Because St. Martin has failed to show any substantive individual instances of error, we also conclude that her evidentiary challenges cannot aggregate to constitute reversible error.

without a motion from the government.  We have jurisdiction to review a district court's refusal to depart downward if the record shows that the district court misunderstood the scope of its authority to depart from the guidelines.[28]

18 U.S.C. § 1958(a) provides that if death results from a murder-for-hire plot, the offender "shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both."  At trial and on appeal, St. Martin argues that this language allows a judge to impose only a fine for violating § 1958, thereby giving the district court the discretion to depart downward.

The Second Circuit Court of Appeals has rejected a similar challenge to identical language contained in 18 U.S.C. § 1959(a)(1), the murder-in-aid-of-racketeering statute.[29]  The Second Circuit rejected the argument that Congress intended to allow a district court to reject either death or life in prison in favor of a fine alone.[30]  We find this reasoning compelling, and reject St. Martin's argument that the district court erroneously believed it could not grant a downward departure.

IV.

---

[28]*See United States v. Cothran*, 302 F.3d 279, 290-291 (5th Cir. 2002).

[29]*See United States v. James*, 239 F.3d 126-127 (2nd Cir. 2000).

[30]*Id.*

16

For the reasons stated above, we AFFIRM St. Martin's conviction and sentence.