07-3059-cr
United States v. Bullock

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: October 3, 2008          Decided: December 17, 2008)

Docket No. 07-3059-cr

- - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

        Appellee,

        -v.-                                07-3059-cr

WILLIAM BULLOCK, JR.,

        Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - -x

        Before:        JACOBS, Chief Judge, MINER and SOTOMAYOR,
                       Circuit Judges.

        Defendant-Appellant William Bullock, Jr. appeals from a

judgment of conviction entered in the United States District

Court for the Northern District of New York (McAvoy, J.) on

July 13, 2007.  He argues principally that under the Armed

Career Criminal Act, his prior convictions cannot be counted

because his civil rights had been restored.  For the

following reasons, we affirm.

BRYAN E. ROUNDS, Rounds & Rounds, Kingston, NY, for Defendant-Appellant.

PAUL D. SILVER, Assistant United States Attorney (Carlos A. Moreno, Assistant United States Attorney, on the brief), for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Albany, NY, for Appellee.

DENNIS JACOBS, Chief Judge:

Defendant-Appellant William Bullock, Jr. appeals from a judgment of conviction entered in the United States District Court for the Northern District of New York (McAvoy, J.) on July 13, 2007. Bullock argues that: (1) his conviction (and sentence) under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), must be set aside because his civil rights had been restored; (2) his motion for a judgment of acquittal or new trial should have been granted because there was insufficient evidence to establish his constructive possession of ammunition found in a shared residence; (3) the jury venire was not representative of a cross-section of the community; and (4) his sentence is disproportionate in violation of the Eighth Amendment. We affirm.

## BACKGROUND

In October 2005, a confidential informant working for the Albany County Sheriff's Department made two small purchases of crack cocaine from Bullock. Based on these transactions, the Sheriff's Department obtained a search warrant for the residence that Bullock shared with his fiancee.

During a search of the residence executed on October 12, 2005, law enforcement officials opened a dresser drawer in the bedroom shared by Bullock and his fiancee and found a small quantity of crack cocaine, some correspondence addressed to Bullock, eight rounds of ammunition, zip-lock baggies of a kind used to package cocaine, a speed loader used to feed ammunition into a revolver, and $1,543 cash. Thirty dollars of the cash was identified as pre-recorded buy money paid to Bullock during a transaction with the confidential informant. Law enforcement officials also seized a rifle, two shotguns, and assorted ammunition from a duffel bag in Bullock's garage.

Bullock was charged with two ACCA counts, one for possessing ammunition and the other for possessing firearms after having been convicted of at least three violent felony

offenses in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He was convicted on the ACCA count charging possession of ammunition but acquitted on the ACCA count charging possession of firearms. He was also convicted on two counts of possessing with intent to distribute and distributing cocaine base and one count of possessing with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1). Bullock was sentenced principally to 188 months' imprisonment on the ACCA count, eight months above the mandatory minimum sentence, and to twelve months and a day on each of the other counts to run concurrently with the sentence on the ACCA count.

**DISCUSSION**

**I**

Bullock argues that the imposition of a fifteen-year mandatory minimum sentence was error because the ACCA does not count convictions that have "been expunged, or set aside or for which a person has been pardoned or has had civil rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive

4

firearms." 18 U.S.C. § 921(a)(20).

Bullock contends that his civil rights had been restored at the time of the present offense because he "had been off parole for 11 years," he "was entitled to vote," and New York State law did not restrict his right to possess ammunition.

The restoration of civil rights involves three components: (1) the right to vote; (2) the right to serve on a jury; and (3) the right hold elective office. See McGrath v. United States, 60 F.3d 1005, 1007 (2d Cir. 1995); see also Logan v. United States, 128 S. Ct. 475, 480 (2007) ("While § 921(a)(20) does not define the term 'civil rights,' courts have held, and petitioner agrees, that the civil rights relevant under the above-quoted provision are the rights to vote, hold office, and serve on a jury."). Bullock's rights to vote and hold office were arguably restored by operation of law. See N.Y. Election Law § 5-106; N.Y. Civil Rights Law § 79. However, his right to serve on a jury was not; he was not pardoned; and none of his prior convictions were expunged. See N.Y. Judiciary Law § 510(3) ("In order to qualify as a juror a person must not . . . [n]ot have been convicted of a felony.").

Accordingly, Bullock cannot establish that his prior convictions are not counted as "crime[s] punishable by imprisonment for a term exceeding one year" as defined in 18 U.S.C. § 921(a)(20).

Bullock contends that he should not be penalized under federal law for conduct (possession of ammunition) that he was free to do under state law. But this is a mere irony. As the Seventh Circuit Court of Appeals has observed on similar facts, "a federal prosecution for felon in possession of ammunition . . . is in no manner dependent on whether the state in which the crime is committed has enacted a parallel statute criminalizing the same conduct." United States v. Wilson, 437 F.3d 616, 619 (7th Cir. 2006). Obviously, federal law may bar conduct that a state allows. The role of the state "in the federal statutory scheme . . . is limited to the determination of whether the defendant is a convicted felon. Once the felony conviction is established, federal law prohibits the possession of either firearms or ammunition." Id. at 619-20.

Bullock also asserts that because his prior convictions were for crimes committed in the 1970's, imposition of a fifteen-year mandatory minimum sentence in this case does

not serve the congressional purpose of the ACCA to punish dangerous recidivists. Congress's intent, however, is irrelevant because the statutory wording at issue is unambiguous.

**II**

Bullock challenges the denial of his motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or a new trial under Federal Rule of Criminal Procedure 33.

We "review de novo a district court's denial of a Rule 29 motion, applying the same standard [for] sufficiency [of the evidence] as the district court." United States v. Florez, 447 F.3d 145, 154 (2d Cir. 2006). That standard places a heavy burden on the defendant, whose conviction must be affirmed if "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. MacPherson, 424 F.3d 183, 187 (2d Cir. 2005) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). As to a new trial, Rule 33 allows a district court, upon motion by the defendant, to "vacate any judgment and grant a new trial if the interest of justice so

requires." Fed. R. Crim. P. 33(a). But "[w]e will not disturb the district court's findings of fact [on a Rule 33 motion] unless [they are] clearly erroneous, and we will not overturn the district court's decision except for an abuse of discretion." United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993).

Bullock argues that there was insufficient evidence to establish his constructive possession of the ammunition found in the bedroom dresser drawer and that the government proved no more than that Bullock and his fiancee shared the bedroom and that Bullock had access to the dresser.

Bullock understates the quantum of evidence, which included: (1) that correspondence addressed to Bullock was found in the drawer with the ammunition; (2) that the ammunition was discovered in a drawer with men's underwear in a dresser with only men's clothing; and (3) that $1,543 cash was found in the drawer, including $30 of pre-recorded buy money given to Bullock a few days earlier. Given this evidence, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hardwick, 523 F.3d 94, 100 (2d Cir. 2008). For the same reason, the district court did not abuse its

8

discretion in failing to grant Bullock's Rule 33 motion.

**III**

Bullock asserts that the jury venire in his case did not represent a fair cross-section of the community, in violation of the Sixth Amendment. Bullock objected at trial that none of the 100 jurors on the venire were African-American or members of "any racial minority." On appeal, Bullock reasserts this argument and presents demographic data for two cities (Albany and Binghamton) and one county (Broome County) in the Northern District of New York.

To prevail on his cross-section claim, Bullock must show

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).

Bullock loses because he has not established any "systematic exclusion." Id.; accord United States v. Joyner, 201 F.3d 61, 75 (2d Cir. 2000) (denying Sixth

9

Amendment cross-section claim because defendant "made absolutely no showing that African Americans were systematically excluded"). To the contrary, Judge McAvoy explained at trial that in constructing the jury pool, the court drew potential jurors from the rolls of voters and drivers. The motor vehicle roll was included specifically "to make sure that [the] jury pool [wa]s balanced." That the district court failed in its attempt to achieve such balance does not detract from the court's demonstrably race-neutral approach to juror selection.

**IV**

Finally, we reject Bullock's argument that a sentence of fifteen years for possession of eight rounds of ammunition is so disproportionate as to constitute cruel and unusual punishment under the Eighth Amendment. "[T]he Eighth Amendment does not require strict proportionality between crime and sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime." Harmelin v. Michigan, 501 U.S. 957, 960 (Kennedy, J., plurality opinion); see also United States v. Yousef, 327 F.3d 56, 163 (2d Cir. 2003) ("The Eighth Amendment forbids

only extreme sentences that are grossly disproportionate to the crime, and, with the exception of capital punishment cases, successful Eighth Amendment challenges to the proportionality of a sentence have been exceedingly rare." (internal quotation marks and citations omitted)).

Bullock has one prior conviction for robbery in the first degree with intent to cause serious injury and two convictions for robbery in the first degree with the use of a dangerous weapon.  In light of this criminal history, the sentence for possession of ammunition cannot be construed as "grossly disproportionate."  This Court has approved sentences under the ACCA for offenses similar to Bullock's.  See, e.g., United States v. Gamble, 388 F.3d 74, 75-77 (2d Cir. 2004) (per curiam) (affirming sentence of 261 months for defendant arrested for possession of a small quantity of crack cocaine and possession of ammunition clip containing six rounds).

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

11