**UNITED STATES of America,**
**Appellee,**

v.

**Junior CUSTODIOS, Also Known as Junior Montaz, Also Known as Junior Montez, Also Known as Guancho Trompeta, Defendant,**

**Alfred Soler, Also Known as Manuel Soler, Also Known as Alfredo Soler, Defendant–Appellant.**

No. 08–3176–cr.

United States Court of Appeals, Second Circuit.

April 28, 2009.

John Burke (Kelley J. Sharkey, on the brief), Brooklyn, NY, for Defendant–Appellant.

Jillian Berman (David S. Leibowitz, Katherine Polk Failla, on the brief), Assistant United States Attorneys, for Lev L. Dassin, Acting United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. ROSEMARY S. POOLER and Hon. SONIA SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

Defendant–Appellant Alfred Soler was convicted after a jury trial of causing or aiding and abetting the intentional killing of Jose Martinez, a/k/a "Chavello," while engaged in a narcotics conspiracy involving at least five kilograms of cocaine, in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2 (Count One); conspiring to travel in interstate or foreign commerce or to use a facility of interstate commerce with the intent that the murder of Martinez be committed in violation of New York State law and as consideration for anything of pecuniary value, in violation of 18 U.S.C. § 1958 (Count Two); and murdering or aiding and abetting the murder of Martinez through use of a firearm in the course of committing a narcotics conspiracy, in violation of 18 U.S.C. § 924(j)(1)–(2) (Count Three). Soler was sentenced principally to three terms of life imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

■ Soler contends that he is entitled to a judgment of acquittal under Federal Rule of Criminal Procedure 29. This Court "review[s] *de novo* a district court's denial of a Rule 29 motion, applying the same standard [for] sufficiency [of the evidence] as the district court." *United States v. Florez*, 447 F.3d 145, 154 (2d Cir.2006). That standard imposes a heavy burden on the defendant, whose conviction must be affirmed if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Bullock*, 550 F.3d 247, 251 (2d Cir.2008) (quoting *Unit-*

*ed States v. MacPherson*, 424 F.3d 183, 187 (2d Cir.2005)).

■ Soler argues that the government's evidence was insufficient because it consisted primarily of the testimony of unreliable and interested witnesses. It is axiomatic that " 'the credibility of witnesses is the province of the jury and we simply cannot replace the jury's credibility determinations with our own.' " *United States v. James*, 239 F.3d 120, 124 (2d Cir.2000) (quoting *United States v. Khan*, 53 F.3d 507, 514 (2d Cir.1995)). Other than the witnesses' criminal histories and obvious interest in leniency, Soler has identified no reason to discount the government's evidence. In effect, he invites us to substitute our judgment for that of the jury.

Soler also argues that the government failed to prove that he knew the killing was connected to the narcotics conspiracy charged in Counts One and Three or that he intended to join the conspiracy.

Soler does not contest that the government established the existence of a narcotics conspiracy in which codefendant Junior Custodios and Martinez were participants. Substantial evidence of such a conspiracy was introduced through the testimony of Alejandro Rodriguez, Alcibiades Mercado Garcia, and Guillermina Martinez.

■ The evidence established that Soler knew of the conspiracy. Mercado Garcia testified that he knew Soler collected drug debts, which is why he introduced him to Custodios. He also testified that before Soler committed the murder, he asked Mercado Garcia "why is it that [Custodios] wants to do this to [Martinez]?" Mercado Garcia replied "it happened because of drugs that they had stolen and that [Custodios] had kept more of the drugs that [Martinez] was supposed to get." This allowed the inference that Soler knew that Martinez and Custodios stole narcotics to-

gether and that the killing was related to the narcotics business.

■ "There is also ample evidence that [Soler] engaged in purposeful behavior: He agreed to commit the murder[ ] and in fact then shot [Martinez] to death." *United States v. Santos*, 541 F.3d 63, 72 (2d Cir.2008) (citation and quotation marks omitted). Soler accepted Custodios' offer of $15,000 and a car in exchange for killing Martinez; he planned the murder over the course of a week with Custodios and other associates; and he agreed to perform additional work for Custodios after committing the crime. This demonstrated Soler's intent to join the charged narcotics conspiracy. "That [Soler] did not participate in the narcotics conspiracy in some way other than carrying out the murder[ ] does not undermine the sufficiency of the evidence that he was a co-conspirator." *Id.* at 73.

As to the sufficiency of the evidence on Count Two: the government introduced evidence that Soler agreed to kill Martinez for $15,000 and a car; that he purchased a car in New Jersey and transported it to New York to commit the offense; and that he killed Martinez in a garage in the Bronx on July 2, 1998 in exchange for the promised payment.

■ ■ Soler argues that the district court plainly erred in failing to instruct the jury that it was required to find "that it was either known or reasonably foreseeable to the defendant that the conspiracy [charged in Count One] involved the drug type and quantity charged." *Id.* at 70–71 (quoting *United States v. Adams*, 448 F.3d 492, 499 (2d Cir.2006)). In *Santos*, we held that knowledge of drug type and quantity is an issue for the jury in any narcotics conspiracy punishable under 21 U.S.C. § 841(b)(1)(A), including a conspiracy that serves as the predicate for an offense under 21 U.S.C. § 848(e)(1)(A). The district court failed to instruct the

jury on this element after both parties erroneously stated that they did not believe an instruction was necessary.

■ Soler conceded at oral argument that there can be no plain error as to Count One if his convictions on Counts Two and Three (for which he was sentenced to life sentences) are affirmed. Because we affirm Soler's convictions on Counts Two and Three, his challenge to the jury charge is waived. We do not decide whether the district court's error "affects substantial rights" or "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Carr*, 557 F.3d 93, 109 (2d Cir.2009).

■ ■ Soler asserts that the district court erred in giving an aiding and abetting instruction in connection with Count Three. Soler argues that the district court erred because "the court had conditionally agreed not to give the charge and the defense relied upon that agreement in structuring his own argument." But Soler fails to demonstrate that "he was substantially misled in formulating his arguments or otherwise prejudiced." *James*, 239 F.3d at 125 (internal quotation marks omitted). We conclude that the charge was consistent with the trial evidence and stated the law accurately.

■ ■ Soler objects to the admission of the testimony of Rodriguez as to out of court statements by Martinez explaining why he would not give Custodios the proceeds of a robbery and stating that Custodios "had to be killed." Soler argues that he and Martinez were not members of the same conspiracy and that Martinez's statements were inadmissible hearsay.

Federal Rule of Evidence 801(d)(2) provides that "[a] statement is not hearsay if ... [it] is offered against a party and is

... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Rodriguez and Guillermina Martinez both testified at trial that Custodios and Martinez were associates. Martinez's statements about Custodios also evidence joint activity in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 180, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) ("[A] co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy.").

"The existence and membership of a conspiracy are preliminary questions of fact that must be resolved by the district court before a challenged statement may be admitted under Rule 801(d)(2)(E)." *United States v. Al–Moayad*, 545 F.3d 139, 173 (2d Cir.2008) (citation and quotation marks omitted); *see also Bourjaily*, 483 U.S. at 175, 107 S.Ct. 2775 ("[b]efore admitting a co-conspirator's statement ... the existence of a conspiracy and [a defendant's] involvement in it" must be resolved by the district court as "preliminary questions of fact."). Soler joined the conspiracy when he agreed to kill Martinez as an act incident to the conspiracy's narcotics activities. In light of this evidence, the district court did not abuse its discretion in ruling that Martinez and Soler were coconspirators. We need not decide whether the district court had a sufficient basis for concluding, at the time it admitted the evidence, that Soler was a member of the charged conspiracy, because any error was harmless.

■ Soler challenges the district court's admission of Mercado Garcia's testimony about first meeting Soler in the course of a drug trafficking transaction and Amanda Quinones' testimony about Soler beating her with a gun.

Federal Rule of Evidence 404(b) prohibits admission of "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." "[T]his Circuit takes an inclusive approach to prior bad act testimony: such testimony can be admitted for any purpose except to show criminal propensity." *United States v. Stevens*, 83 F.3d 60, 68 (2d Cir.1996). Balancing under Rule 403 ensures that probative value is not substantially outweighed by unfair prejudice.

■ In testifying about meeting Soler, Mercado Garcia stated that he had an "understanding" as to why Soler was working with a man who Mercado Garcia knew was a drug dealer. The district court sustained Soler's prompt objections and did not allow Mercado Garcia to expand on his "understanding." Mercado Garcia's limited testimony about meeting Soler provided context for his broader account of their relationship. The testimony was not offered for an improper purpose and the district court did not abuse its discretion in admitting it.

■ Soler also argues that the district court should not have permitted Quinones to testify that Soler attacked her with a gun. Quinones explained that the beating she received from Soler was the worst she had ever suffered, and that the severity of the beating led her to share Soler's confession with the police after a year of keeping it secret. In admitting the evidence, the district court gave a limiting instruction that the evidence of the assault was only introduced to explain why Quinones went to the police and that it could not be considered evidence of guilt. The district court had discretion to admit this testimony because it explained why Quinones delayed a year in telling the police about the admission she overheard Soler making.

Finally, Soler contends that the district court erred in permitting Martinez's widow to testify and thereby provoke the jury's sympathy. Her testimony was probative of the relationship between Martinez and Custodios and it buttressed the government's theory that the killing resulted from a rift among associates. The testimony also corroborated details of the murder itself, such as where Martinez worked. Soler describes no specific aspect of the testimony that was unduly prejudicial. The district court did not abuse its discretion in permitting Guillermina Martinez to testify.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.