UNITED STATES of America,
Appellee,

v.

Jose D. FLOREZ, Defendant–Appellant.

Docket No. 05–2385 CR.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 4, 2006.

Decided: May 3, 2006.

Mark Gimpel (David Zapp, on the brief), New York, New York, for Defendant–Appellant.

Daniel E. Wenner, Assistant United States Attorney (David C. James, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Appellee.

Before: KEARSE and RAGGI, Circuit Judges, and RESTANI, Chief Judge, U.S. Court of Int'l Trade.[1]

REENA RAGGI, Circuit Judge:

Defendant Jose Dorance Florez ("Florez") appeals from a judgment of conviction entered on May 12, 2005, after a jury trial in the United States District Court for the Eastern District of New York (Charles P. Sifton, *Judge*) at which he was found guilty of two narcotics conspiracies, the first to import more than one kilogram of heroin into the United States in violation of 21 U.S.C. §§ 963, 960(a)(1), 960(b)(1)(A), and the second to possess with intent to distribute the same quantity of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(i). Sentenced to concurrent incarceratory terms of 210 months, which he is presently serving, as well as concurrent five-year terms of supervised release, and a total $200 special assessment, Florez challenges the district court judgment on the grounds that (1) the charges against him are time-barred, (2) the record evidence is legally insufficient to support his conviction, and (3) his incarceratory sentence is (a) based on impermissible judicial factfinding as to drug quantity and (b) unreasonably disproportionate to the ten-year prison term imposed on his brother for participation in the same conspiracies. We reject these claims as without merit and hereby affirm the judgment of conviction.

## I. *Factual Background*

Florez's conviction originates in a conspiracy to import heroin from Colombia into the United States and in a related conspiracy to take possession of those drugs in the United States in order to distribute them in this country. The trial evidence showed that Florez initially proposed these schemes to his brother, Jose Maria Florez, also known as "Chepe," after which the brothers financed and supervised a heroin importation and distribution ring that operated between February and November 1997.

In furtherance of their conspiratorial objectives, Florez and Chepe recruited numerous couriers to smuggle heroin into the United States. At trial, three of these couriers provided direct evidence as to the workings of the charged conspiracies and Florez's participation in them. Each courier testified that Florez's main role was to provide couriers with heroin in South America and to instruct them how best to smuggle the drugs into the United States. Upon the couriers' arrival in the United States, Chepe would pay them, take custody of the smuggled heroin, and arrange for its distribution.

At the conclusion of the six-day trial, the jury convicted Florez of (1) conspiracy to import more than one kilogram of heroin and (2) conspiracy to possess with intent to distribute that same quantity of heroin. It acquitted Florez on related substantive importation and possession counts. In response to a special interrogatory, prompted in part by the Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the jury further found beyond a reasonable doubt that Florez was responsible for a

---

1. The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

total of more than three but less than ten kilograms of heroin on the conspiracy counts of conviction.

At sentencing, the district court, relying on *United States v. Booker,* 543 U.S. 220, 258–59, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), concluded that it was not bound by the jury's finding as to any drug quantity in excess of the more-than-one-kilogram quantity of heroin needed to trigger a statutory minimum sentence of ten years. In calculating Florez's Sentencing Guidelines range, the court found that the defendant was responsible for "upwards of 16 kilos" of heroin. *See* U.S.S.G. § 2D1.1(c)(2) (providing base offense level 36 for drug crimes involving more than 10 but less than 30 kilograms of heroin). Because the district court further found that Florez played a supervisory role in the crimes of conviction, *see id.* § 3B1.1(b) (providing for three-level enhancement), it assigned him a total offense level of 39, which, with a criminal history category of I, resulted in a Guidelines range of 262 to 327 months' incarceration. Nevertheless, the district court elected to impose a non-Guidelines prison sentence of 210 months, taking into consideration the fact that Chepe, who had earlier pleaded guilty to his involvement in the same narcotics schemes before a different judge, had received a ten-year sentence.

## II. *Discussion*

### A. *The Statute of Limitations Challenge*

Florez submits that, because his criminal conduct occurred in 1997, his 2004 indictment is necessarily time-barred by the five-year statute of limitations applicable to non-capital federal crimes. *See* 18 U.S.C. § 3282. Florez acknowledges, as he must, that this limitations period is appropriately tolled during any time when he was a fugitive from justice. *See* 18 U.S.C. § 3290 ("No statute of limitations shall extend to any person fleeing from justice."). Nevertheless, he submits that the district court erred in tolling the statute of limitations in his case from June 10, 1998, the date of Chepe's arrest, to May 24, 2003, the date law enforcement authorities discovered Florez's whereabouts, because he was not fleeing from justice during that time. We disagree.

### 1. *The Burden of Proof and Standard of Review*

■ To toll a statute of limitations, it is the government's burden to show that a defendant was "fleeing from justice." 18 U.S.C. § 3290. In *Jhirad v. Ferrandina,* 536 F.2d 478, 484–85 (2d Cir.1976) ("*Jhirad II*"), we concluded that, in the context of an extradition proceeding, this burden can be carried by a preponderance of the evidence. *See also Ross v. United States Marshal,* 168 F.3d 1190, 1193–94 (10th Cir. 1999) (applying preponderance standard to interpretation of flight under § 3290 in extradition proceeding). Since then, a number of our sister circuits have ruled that a preponderance showing also satisfies the application of § 3290 to a United States criminal prosecution. *See United States v. Greever,* 134 F.3d 777, 781 (6th Cir.1998); *United States v. Marshall,* 856 F.2d 896, 900 (7th Cir.1988); *United States v. Gonsalves,* 675 F.2d 1050, 1054 (9th Cir.1982). As the Ninth Circuit explained, because proof of flight is not determinative of guilt, it is not fairly viewed as an element of the crime of conviction requiring proof beyond a reasonable doubt. *See United States v. Gonsalves,* 675 F.2d at 1054 (citing *Lego v. Twomey,* 404 U.S. 477, 487, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (holding that government need only prove voluntariness of confession by preponderance of evidence and noting that "guilty verdict is not rendered less reliable ...

simply because the admissibility of a confession is determined by a less stringent standard")).

■■■■ One district court outside this circuit has ruled to the contrary, holding that § 3290 flight must be proved beyond a reasonable doubt to a jury "just like any other element of the case." *United States v. Owens,* 965 F.Supp. 158, 163 (D.Mass. 1997). We are not persuaded. Due process demands "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [a defendant] is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Whether Florez fled from justice is not a fact constituting any part of the narcotics crimes with which he was charged. Rather, it is a fact that determines whether the law will toll the statute of limitations for Florez's prosecution on *any* non-capital crime. Thus, while proof of Florez's flight may well have been necessary to avoid a statute-of-limitations dismissal of his indictment, such flight did not thereby become an element of the charged narcotics offenses. For this reason, we conclude that the flight necessary to support § 3290 tolling is properly determined by the trial court rather than the jury.[2] Further, we join our sister circuits in holding that, in a criminal prosecution, the government carries its § 3290 burden when it proves a defendant's flight from justice by a preponderance of the evidence.

With this burden in mind, we review the district court's findings of fact relevant to

the application of § 3290 only for clear error, and we review *de novo* its legal conclusion that these facts establish flight as specified by the statute. *See Ross v. United States Marshal,* 168 F.3d at 1193; *United States v. Greever,* 134 F.3d at 779; *cf. United States v. Jaffe,* 417 F.3d 259, 263 (2d Cir.2005) (holding that, in reviewing restitution component of sentence, issues of law are reviewed *de novo* and findings of fact for clear error).

### 2. *The Contours of Flight Under 18 U.S.C. § 3290*

In construing the flight requirement of § 3290, we begin with *Streep v. United States,* 160 U.S. 128, 16 S.Ct. 244, 40 L.Ed. 365 (1895), in which the Supreme Court considered the meaning of the phrase. "fleeing from justice" as used in an earlier statute creating an exception to the application of a limitations period. In *Streep,* the Court stated:

> It is unnecessary, for the purposes of the present case, to undertake to give an exhaustive definition of the[ ] words ["any person fleeing from justice"]; for it is quite clear that any person who takes himself out of the jurisdiction, with the intention of avoiding being brought to justice for a particular offence, can have no benefit of the [statute of] limitation[s], at least when prosecuted for that offence in a court of the United States.

*Id.* at 133, 16 S.Ct. 244.

Drawing from this language, most courts, including our own, have concluded

---

**2.** Of course, once a court applies § 3290 tolling to recalculate the relevant limitations period in a case, the jury must then find beyond a reasonable doubt that the defendant committed the charged criminal conduct within that period. *See generally United States v. Salmonese,* 352 F.3d 608, 613–14, 618–19 (2d Cir.2003) (discussing jury determination whether charged overt acts occurred within

limitations period); *see also* Leonard B. Sand, et al., 1 *Modern Federal Jury Instructions: Criminal,* Instruction 19–7 (2003) (in model conspiracy charge, suggesting that judge instruct as to date statute of limitations period begins to run, so that jury can determine whether an overt act occurred during that period).

that a person's mere absence from a jurisdiction is insufficient, by itself, to demonstrate flight under § 3290 (or its statutory predecessor); there must be proof of the person's intent to avoid arrest or prosecution. As we observed in *Jhirad v. Ferrandina*, in the context of an extradition proceeding, "the phrase 'fleeing from justice' carries a common sense connotation that only those persons shall be denied the benefit of the statute of limitations who have absented themselves from the jurisdiction of the crime *with the intent of escaping prosecution*." 486 F.2d 442, 444–45 (2d Cir.1973) ("*Jhirad I*") (emphasis added); *accord United States v. Rivera–Ventura*, 72 F.3d 277, 283 (2d Cir.1995). Many of our sister circuits agree that such intent is a necessary component of flight. *See Ross v. United States Marshal*, 168 F.3d at 1194 (10th Cir.1999) (holding that "fleeing from justice" requires proof that "the accused acted with the intent to avoid arrest or prosecution"); *United States v. Greever*, 134 F.3d at 780 (6th Cir.) (holding that § 3290 requires proof "that the defendant concealed himself with the intent to avoid prosecution"); *United States v. Fonseca–Machado*, 53 F.3d 1242, 1244 (11th Cir.1995) (holding that "a fugitive from justice ... must be found to have absented himself from the jurisdiction with the intent to avoid prosecution"); *United States v. Marshall*, 856 F.2d at 900 (7th Cir.) (concluding that "defendant's intent to avoid arrest or prosecution must be proved in order to trigger the tolling provisions of Section 3290"); *United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir.1976) (holding that "intent to avoid prosecution is an essential element of 'fleeing from justice'"); *Brouse v. United States*, 68 F.2d 294, 295 (1st Cir.1933) (holding that "essential characteristic of fleeing from justice is leaving one's residence, or usual place of abode or resort, or concealing

one's self, with the intent to avoid punishment").

■ Although decisions by the Eighth and D.C. Circuits suggest that the specific intent to avoid prosecution is not essential to toll a statute of limitations on account of flight, *see In re Assarsson*, 687 F.2d 1157, 1162 (8th Cir.1982); *McGowen v. United States*, 105 F.2d 791, 792 (D.C.Cir.1939), the latter court, at least, has tempered this view when the evidence of flight does not show actual departure from the jurisdiction, *see United States v. Singleton*, 702 F.2d 1159, 1169–70 (D.C.Cir.1983) (concluding that showing of intent to avoid prosecution is required for § 3290 tolling when accused does not leave jurisdiction where crime was committed). No matter. In this circuit, the rule in criminal prosecutions remains that stated in *Jhirad I* and *Rivera–Ventura:* a finding of flight under § 3290 requires proof that a defendant intended to avoid arrest or prosecution.

■ Preliminary to reviewing Florez's claim that the district court erred in finding that he possessed the requisite intent to flee justice, we reiterate some basic legal principles relevant to this determination. First, while a person's intentional flight from justice may certainly be inferred from his "failure to surrender to authorities once he learns that charges against him are pending," *United States v. Catino*, 735 F.2d 718, 722 (2d Cir.1984); *see also United States v. Greever*, 134 F.3d at 780 (collecting cases), formal charges are not essential to such an inference. As this court stated in *United States v. Rivera–Ventura*, "where a person [is] aware that a criminal investigation [is] underway," a court may conclude that he intentionally " 'fle[d]' " within the meaning of § 3290 even though no prosecution [has] been commenced in any jurisdiction." 72 F.3d at 283; *see Streep v. United States*, 160 U.S. at 133, 16 S.Ct. 244 (holding that

"fleeing from justice" does not require "that the course of justice should have been put in operation by the presentment of an indictment ..., or by the filing of an information ..., or by the making of a complaint .... It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun").

■ Second, the government need not prove a defendant's actual departure from the jurisdiction in which the crime was committed to establish intentional flight from justice under § 3290. As the Ninth Circuit has explained, "[i]t is enough that an accused leaves his usual place of abode and conceals himself for the purpose of avoiding arrest or prosecution. In modern large and heavily populated districts it is almost as easy to avoid arrest or prosecution by concealing oneself within the district as by fleeing the district." *United States v. Wazney*, 529 F.2d at 1289 (internal citations omitted); *see United States v. Greever*, 134 F.3d at 780 ("There is nothing in the language of 18 U.S.C. § 3290 that requires the government to prove that the defendant left the jurisdiction."); *Ferebee v. United States*, 295 F. 850, 851 (4th Cir.1924) (holding that a defendant's "departure from his usual place of abode and the concealing of himself within the district is equally within the meaning" of a prior fleeing-felon statute as defendant's flight to another jurisdiction). Indeed, as we have recognized, "[f]leeing from justice is not always a physical act; it may be a state of mind." *United States v. Eng*, 951 F.2d 461, 464 (2d Cir.1991), (holding that defendant who resisted extradition could be fleeing felon even though he was imprisoned in another jurisdiction), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996).

■ Finally, a finding of intentional flight under § 3290 is not necessarily foreclosed by a hindsight determination that the government might have located the defendant sooner if it had taken certain actions. "Rather, the nature and the extent of the efforts of government agents to locate the defendant is one factor to consider in determining whether it is reasonable to infer from the agents' failure to locate the defendant that the defendant was acting with the intent to avoid arrest or prosecution." *United States v. Greever*, 134 F.3d at 780 n. 1 (internal quotation marks omitted).

Applying these principles to this case, we identify no error of law or fact in the district court's conclusion that, beginning on June 10, 1998, and continuing through May 24, 2003, Florez was fleeing from justice with the intent of avoiding arrest or prosecution for his narcotics trafficking.

### 3. *Florez's Intentional Flight from Justice*

■ After conducting an evidentiary hearing, the district court concluded that the evidence "overwhelming[ly]" indicated "to a high probability that the defendant fled shortly after his brother[ Chepe's] arrest" on June 10, 1998, "and thereafter concealed himself for a number of years for the sole purpose of avoiding prosecution." Pretrial Tr. June 23, 2004, at 19. This evidence took various forms, starting with Florez's statements to two co-workers that his brother was in trouble. That acknowledgment, together with evidence that Florez and Chepe were joint participants in a large-scale drug trafficking operation, permitted the district court to infer Florez's awareness that law enforcement authorities were—or soon would be—seeking to apprehend him as well as Chepe.

The evidence further showed that, after June 10, 1998, the day of Chepe's arrest,

Florez never returned to his workplace, although he had been employed there for approximately twelve years. Similarly, he ceased residing at the Queens home he had shared with Chepe. In response to law enforcement inquiries over the ensuing weeks and months, family and co-workers reported that Florez had returned to his native Colombia. Indeed, in 2001, Florez told a female acquaintance, Girleza Silva, that he had just returned from Colombia when he asked if he could list her Queens address—where he never lived—as his residence on a New York State driver's license application. Florez also used Silva's bank account to conduct financial transactions.

Although the totality of these circumstances strongly supports the district court's finding of flight with the intent to avoid arrest and prosecution, Florez submits that no such conclusion could be drawn in light of other evidence showing that (1) prior to June 1998, he routinely took several months' leave from his job during the summer months; and (2) he had lived openly at two Queens addresses, one belonging to a relative, the other to a friend, between October 2000 and January 2004. His argument is unconvincing.

However routine it may have been for Florez to take extended summer leaves from his employment, what was *not* typical was his total failure to return to his job, as occurred in the years after his brother's June 1998 arrest. The district court did not clearly err in rejecting the argument that Florez's disappearance from all known New York locations after that day was merely coincidental to his brother's arrest. It reasonably concluded from the totality of the evidence that Florez fled at that time with the specific intent to avoid arrest and prosecution. *See United States v. Martin,* 426 F.3d 68, 77 (2d Cir.2005) (" 'The fact that an innocent explanation

may be consistent with the facts alleged' " does not negate court's factual finding (quoting *United States v. Fama,* 758 F.2d 834, 838 (2d Cir.1985))); *United States v. Maher,* 108 F.3d 1513, 1530 (2d Cir.1997) (ruling that district court was entitled to reject defendants' belated innocent explanations for their conduct and to credit inculpatory evidence); *cf. United States v. MacPherson,* 424 F.3d 183, 190 (2d Cir. 2005) (holding that defendant's innocent explanations for conduct did not preclude jury from inferring requisite *mens rea* from other inculpatory evidence).

The fact that, at some point in 2000 or 2001, Florez may have returned to Queens, does not undermine this inference. To the contrary, the fact that Florez deliberately did not use either of the Queens addresses where he purportedly lived in securing his New York State driver's license, preferring instead falsely to list Girleza Silva's address as his residence, strongly indicates Florez's continued intent to conceal his true whereabouts in order to avoid being apprehended. That purpose is further evidenced by Florez's use of Ms. Silva's bank account, as opposed to that of the relatives or friends with whom he was actually residing, to deposit a $13,000 check for back pay from his former employer. Indeed, the fact that Florez paid Ms. Silva $3,600—more than 25% of the check's value—for this use of her bank account indicates the particularly high value the defendant placed on effecting a rather routine transaction in a way that would minimize anyone's ability to locate him. Although Florez later tried to add his name to Ms. Silva's account to facilitate his access to the deposited funds, his hasty departure from the bank when he thought a teller was attempting telephonically to confirm his identification documents, further evidences his determination to avoid any inquiry that might draw official attention to himself and possibly lead to his arrest.

■ Finally, we identify no clear error in the district court's conclusion that the government's efforts to locate Florez throughout the period from June 10, 1998 to May 24, 2003, were "reasonably diligent." Pretrial Tr. June 23, 2004, at 21. From June 10, 1998, well into 1999, law enforcement authorities actively sought to locate Florez at various Queens locations only to be told by co-workers and family members that he was in Colombia. When, in February 2001, officials received information that Florez had returned to the United States, relatives continued to insist that he was, in fact, still in Colombia. In February 2002, upon learning that Florez had used Girleza Silva's address to secure a New York State driver's license, authorities questioned Ms. Silva, who admitted her contacts with the defendant and denied actual knowledge of his whereabouts, but provided various leads, none of which bore fruit. Re-interviewed in February 2003, Ms. Silva provided further cooperation; nevertheless, ensuing surveillance efforts to locate Florez again proved unsuccessful. Florez was finally located on May 24, 2003, when, in reporting himself to be the victim of a carjacking, he provided local police with a Queens address.[3] Far from indicating law enforcement neglect in searching for Florez, this evidence of the government's prolonged inability to locate him despite numerous efforts over a five-year period supports the district court's conclusion that defendant's intent throughout was to avoid arrest and prosecution. *See* United States v. Greever, 134 F.3d at 780 n. 1 (observing that where government's reasonable efforts to locate the defendant are unsuccessful, court may infer that "defendant was acting with the intent to avoid arrest or prosecution") (internal quotation marks omitted).

In sum, we conclude that the district court (1) correctly construed the flight requirement of § 3290; (2) committed no clear error in finding that Florez was intentionally fleeing from justice from June 10, 1998, to May 24, 2003; and (3) properly tolled the statute of limitations during that five-year period, rendering meritless Florez's timeliness challenge to his January 2004 indictment.

B. *Sufficiency Challenge*

■ Florez submits that the district court erred in denying his Rule 29 motion for a judgment of acquittal on the ground that the trial evidence was insufficient as a matter of law to support the jury's guilty verdict. *See* Fed.R.Crim.P. 29(c). We review *de novo* a district court's denial of a Rule 29 motion, applying the same standard of sufficiency as the district court. *See* United States v. Jackson, 335 F.3d 170, 180 (2d Cir.2003). That standard imposes a heavy burden on the defendant, whose conviction must be affirmed if " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. MacPherson*, 424 F.3d at 187 (quoting *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in *Jackson* )). In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most favorable to the prosecution,

---

3. Rather than immediately arrest Florez, authorities surveilled him for several months, ultimately taking him into custody at Miami International Airport on January 15, 2004. Apparently, the government did not seek, and the district court did not grant, § 3290 tolling of the statute of limitations for the eight-month period between May 24, 2003, and January 15, 2004. Thus, we need not consider the government's actions during this time. Nor need we consider whether the carjacking report fairly indicates that Florez no longer intended to flee from justice, because the district court ceased tolling the statute of limitations the day that report was filed, and the government does not challenge that decision.

mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court. *See United States v. Salmonese,* 352 F.3d 608, 618 (2d Cir.2003). Applying these principles to this case, it is apparent that Florez's sufficiency challenge lacks merit.

Three cooperating witnesses provided direct evidence of the charged conspiracies and Florez's membership in them. Miguel Pavez, a courier recruited for the importation conspiracy by defendant's brother Chepe, and Rodrigo Deschamps, another courier recruited by Pavez, testified in some detail to several occasions in 1997 when, in Colombia, they received aerosol cans filled with heroin from Florez to smuggle into the United States via Ecuador and Chile. On their arrival in New York, the couriers would give the heroin to Chepe, who would pay them for their efforts. On one occasion in New York, Deschamps overheard Florez tell Chepe that Deschamps was a "good" courier who "should be sent out often, more often." Trial Tr. at 177. Pedro Villagomez testified that Florez recruited him as a courier in February 1997. On two occasions thereafter, in Colombia, Florez gave him aerosol cans filled with heroin and instructed him how to behave when smuggling the drugs into New York, where he also delivered the contraband to Chepe. Eventually, Villagomez proposed to Florez and Chepe that he organize a courier cell to operate from Ecuador. Florez arranged for Villagomez to retrieve suitcases containing heroin at a luggage terminal in Quito for transportation to New York by these couriers. After one of the couriers was arrested in New York in August 1997, Villagomez met with Florez and Chepe in Colombia. As a result, the brothers arranged for Villagomez to transport approximately one kilogram of heroin into the United States via Ecuador in October 1997. Villagomez was arrested in possession of these drugs upon his arrival in Houston, Texas.

Florez submits that this testimony, which we have substantially condensed, was insufficient to support a verdict of guilty because the government failed to offer any documentary corroboration, specifically, customs forms and passenger manifests, confirming his travel between Colombia and New York during the conspiratorial period. Florez emphasizes that the government did offer such evidence with respect to international travel by other conspirators. He contends that, without this corroboration, the accomplice witnesses were inherently incredible. We are not persuaded.

■ The law is well established that a federal conviction may be supported "by the uncorroborated testimony" of even a single accomplice witness "if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *United States v. Parker,* 903 F.2d 91, 97 (2d Cir.1990). As this court has previously explained, the government's failure to corroborate a witness's testimony raises a question as to the weight a jury might choose to give that testimony, not its legal sufficiency to support a conviction. *See United States v. Roman,* 870 F.2d 65, 71 (2d Cir.1989) ("[A]ny lack of corroboration goes only to the weight of the evidence, not to its sufficiency. The weight is a matter for argument to the jury, not a ground for reversal on appeal."). In this case, where three accomplice witnesses provided mutually corroborative direct evidence of the existence of the charged conspiracies and Florez's membership in them, a sufficiency challenge based on the lack of corroborating documentary evidence must necessarily fail.

To the extent Florez challenges the accomplices' credibility based on their plea agreements with the government and their long histories of criminal and dishonest behavior, he simply repeats facts and arguments already presented to the jury. We will not attempt to second-guess a jury's credibility determination on a sufficiency challenge. *See United States v. Autuori,* 212 F.3d 105, 118 (2d Cir.2000) ("It is not for the court on a Rule 29 motion to make credibility determinations . . . ."); *see also United States v. Rea,* 958 F.2d 1206, 1221–22 (2d Cir.1992) ("Matters of the choice between competing inferences, the credibility of the witnesses, and the weight of the evidence are within the province of the jury, and we are not entitled to second-guess the jury's assessments."). Rather, we will assume that the jury "resolve[d] all issues of credibility in favor of the prosecution." *United States v. Khan,* 787 F.2d 28, 34 (2d Cir.1986).

Applying these principles to this case, we conclude that the detailed accomplice testimony was sufficient to support Florez's conviction and that the district court correctly denied Florez's Rule 29 motion for a judgment of acquittal.

### C. *Sentencing Challenges*
#### 1. *Judicial Factfinding as to Drug Quantity*

■ Florez argues that, after *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621, the district court could not calculate his Guidelines sentence based on its own preponderance finding that he had dealt in ten to thirty kilograms of heroin when, as in this case, the jury had concluded beyond a reasonable doubt that he had dealt in three to ten kilograms of heroin.

This argument is foreclosed by our decision in *United States v. Garcia,* which holds that "[j]udicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker.*" 413 F.3d 201, 220 n. 15 (2d Cir.2005); *see also United States v. Gonzalez,* 407 F.3d 118, 125 (2d Cir.2005) (confirming district courts' post-*Booker* authority "to resolve disputed facts by a preponderance of the evidence when arriving at a Guidelines sentence"); *United States v. Crosby,* 397 F.3d 103, 112 (2d Cir.2005) (explaining that "with the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection"). No contrary rule is warranted by the fact that the jury in this case made a specific finding of heroin quantity beyond the one kilogram necessary to trigger statutory mandatory minimums. *See* 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1)(A). As this court ruled in *United States v. Vaughn,* a sentencing court may

> find facts relevant to sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct, as long as the judge does not impose (1) a sentence in the belief that the Guidelines are mandatory, (2) a sentence that exceeds the statutory maximum authorized by the jury verdict, or (3) a mandatory minimum sentence under [21 U.S.C.] § 841(b) not authorized by the verdict.

430 F.3d 518, 527 (2d Cir.2005). The same rationale allowed the district court in this case to make its own preponderance finding of a higher drug quantity than the amount found by the jury.

As the record makes plain, the district court was fully aware of the advisory nature of the Guidelines when it sentenced Florez to 210 months' imprisonment. Indeed, it imposed a non-Guidelines sentence to mitigate the disparity between Florez's Guidelines range and the sentence received by his brother. Further, Florez's

sentence was within the applicable statutory range of ten years to life for each of the crimes of conviction. Under these circumstances, the district court correctly made its own preponderance finding as to the quantity of heroin in excess of one kilogram properly attributable to Florez for purposes of its Sentencing Guidelines calculation.

### 2. The Reasonableness of Florez's Incarceratory Sentence

 Florez contends that his 210–month prison sentence, 52 months less than the low end of his Sentencing Guidelines range, is unreasonable when compared to the 120–month sentence imposed by a different judge on Chepe. *See United States v. Fernandez*, 443 F.3d 19, 25–26 (2d Cir.2006) (discussing authority of appellate courts pursuant to 18 U.S.C. § 3742(a)(1) to review sentences for reasonableness). We disagree.

Reasonableness review "involves consideration not only of the sentence itself, but also of the procedures employed in arriving at the sentence." *Id.* at 26 (collecting cases). The procedural inquiry focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *United States v. Canova*, 412 F.3d 331, 350 (2d Cir.2005); *see United States v. Booker*, 543 U.S. at 261–62, 125 S.Ct. 738. Among these factors is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C § 3553(a)(6). While this court has recognized that Congress's primary concern in enacting § 3553(a)(6) was to minimize sentencing disparities "nationwide," *United States v. Joyner*, 924 F.2d 454, 460 (2d Cir.1991);

accord *United States v. Tejeda*, 146 F.3d 84, 87 (2d Cir.1998), we have not ruled, post-*Booker*, as to whether that statutory section also permits district courts to consider sentencing disparities between co-defendants in the same case, *see United States v. Fernandez*, 443 F.3d at 31–32 n. 9 (leaving "resolution of that issue for another day").

In this case, the district court compared Florez's potential sentence to that received by his brother Chepe, as well as to sentences received by similarly situated defendants nationwide.[4] Because the government does not challenge this application of § 3553(a)(6), we need not address the propriety of considering co-defendant disparity on this appeal. Plainly, Florez cannot complain that the district court committed procedural error in failing fully to consider § 3553(a)(6). His reasonableness challenge reduces, at best, to a complaint about the weight the district court afforded the disparity between his Guidelines range and his brother's sentence. This is not a point on which we are inclined to second-guess a sentencing judge.

 As this court recently explained, "the requirement that a sentencing judge consider an 18 U.S.C. § 3553(a) factor is *not* synonymous with a requirement [that] the factor be given determinative or dispositive weight in the particular case." *Id.* at 32 (emphasis in original). Precisely because § 3553(a)(6) is "only one of several factors that must be weighted and balanced by the sentencing judge," *id.* at 32, a district court's identification of disparity does not necessarily require it "to adjust a sentence downward from the advisory guidelines range in order for that sentence to be reasonable," *United States v. Martinez–Martinez*, 442 F.3d 539, 543

---

**4.** Florez does not argue that his sentence represents an unwarranted disparity with sentences imposed on similarly situated drug traffickers nationwide.

(7th Cir.2006), much less compel any particular reduction. Thus, if sentencing disparities between co-defendants are properly considered, the weight to be given such disparities, like the weight to be given any § 3553(a) factor, "is a matter firmly committed to the discretion of the sentencing judge and is beyond our [appellate] review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." *United States v. Fernandez,* 443 F.3d at 32. Reasonableness review does not, after all, "entail the substitution of our judgment for that of the sentencing judge." *Id.* at 27. Rather, the standard of our review is more akin to "abuse of discretion." *Id.* at 27.

In this case, the record indicates that the district court would have acted well within its discretion in concluding that Florez and his brother were not sufficiently similarly situated to warrant any reduction in the identified sentencing disparity between them. Although the men may have borne comparable culpability in the charged conspiracies, they were dissimilarly situated in other respects important to sentencing. Whereas Chepe had pleaded guilty and accepted responsibility for his role in the charged conspiracies, Florez had successfully fled from justice for almost five years. After apprehension, Florez never accepted responsibility for his criminal conduct, insisting on his innocence even after verdict and at sentencing. *See id.* at 32 (noting that defendants "were not similarly situated" where one pleaded guilty and accepted responsibility for criminal conduct and other did not). Further, the brothers' situations were dissimilar in that Chepe specifically requested and obtained a sentencing departure based on extraordinary family circumstances, whereas Florez made no such application.

In fact, Judge Sifton did not completely deny Florez sentencing consideration based on disparity. Despite reservations about the leniency shown to Chepe, the judge concluded that justice was best served in Florez's case by imposing a non-Guidelines sentence that reduced somewhat the disparity in the brothers' sentences. Because the government does not challenge this rationale, we have no reason to review its consideration under § 3553(a)(6). We conclude only that Florez fails to show that the district court imposed an unreasonable sentence when it narrowed but did not eliminate the sentencing disparity between the two brothers. Florez's sentence "was well within the broad range of reasonable sentences that the District Court could have imposed in the circumstances presented." *Id.* at 34.

### III. *Conclusion*

To summarize, we conclude that: (1) the five-year statute of limitations did not bar Florez's prosecution in this case because that period was tolled from June 10, 1998, to May 24, 2003, while the defendant was a fugitive from justice, *see* 18 U.S.C. § 3290; (2) the trial evidence was sufficient to permit a rational jury to find Florez guilty beyond a reasonable doubt; and (3) the district court (a) properly made a preponderance finding of drug quantity for purposes of calculating Florez's sentence under the advisory Sentencing Guidelines, and (b) imposed a reasonable sentence even though it reflected a sentencing disparity between Florez and his brother for their participation in the same crimes.

AFFIRMED.