16-3734-cr
*United States v. Dominique Mack, et al.*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty.

PRESENT:  JOHN M. WALKER, JR.,
　　　　　　DEBRA ANN LIVINGSTON,
　　　　　　　　　　*Circuit Judges,*
　　　　　　KATHERINE POLK FAILLA,
　　　　　　　　　　*District Judge.**

---

UNITED STATES OF AMERICA,

　　　　　　　*Appellee,*　　　　　　　　　　16-3734-cr

　　　　　　　v.

KERONN MILLER, aka Fresh, TYQUAN LUCIEN, aka TQ, aka Frogger,

　　　　　　　*Defendants,*

DOMINIQUE MACK, aka Lil Sweets,

　　　　　　　*Defendant-Appellant.*

---

**FOR APPELLEE:**　　　　　　　　　BRIAN P. LEAMING (Jennifer R. Laraia, Marc H. Silverman, *on the brief*) Assistant United States Attorneys, *for* John H.

---

* Judge Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

Durham, United States Attorney for the District of Connecticut.

**FOR DEFENDANT-APPELLANT:** JEREMIAH DONOVAN, Old Saybrook, CT.

Appeal from a judgment entered in the United States District Court for the District of Connecticut (Michael P. Shea, *Judge*) following a jury trial.

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Defendant Dominique Mack appeals from a judgment entered in the United States District Court for the District of Connecticut following a jury trial before Michael P. Shea, *Judge*, convicting him of conspiracy to commit witness tampering related to the death of Ian Francis, conspiracy to commit witness tampering by planning to murder Charles Jernigan, and two counts of unlawful possession of a firearm by a felon. The district court sentenced Mack to life imprisonment for each conspiracy conviction and ten years' imprisonment for each firearms conviction, to run concurrently. We assume the parties' familiarity with the facts, procedural history, and issues for review.

On appeal, Mack primarily challenges the adequacy of the jury instructions, certain evidentiary rulings by the district court, and the imposition of a life sentence for the conspiracy convictions. These issues are addressed in a separate opinion issued simultaneously with this summary order. We now address Mack's remaining arguments: (i) that the district court lacked jurisdiction over the prosecution of Mack's firearms charge; (ii) that the district court's approach to re-cross examination, cross-examination, and voir dire violated Mack's rights to due process and to confront the witnesses against him; (iii) that the evidence was insufficient to establish that Mack entered into a conspiracy to murder Jernigan; and (iv) that Mack is entitled to have cell-site location information related to his whereabouts on the evening of the Francis shooting suppressed in light of the Supreme Court's decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018).

### A. Jurisdiction to adjudicate firearms charge

*United States v. Rehaif*, 139 S. Ct. 2191 (2019), held that in prosecuting charges under 18 U.S.C. §§ 922(g) and 924(a)(2), the government must prove that the defendant knew he was a member of a class of persons forbidden from possessing firearms. On appeal, Mack argues that in failing to allege scienter with respect to his status, the indictment failed to allege a federal crime that the district court would have jurisdiction to adjudicate. The Second Circuit recently addressed and rejected this argument in *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019). Recounting that "the standard for the sufficiency of an indictment is not demanding," and that indictments suffice even if they "do little more than . . . track the language of the statute," *id.* at 89 (quoting *United States v. Stringer*, 730 F.3d

120, 124 (2d Cir. 2013)), *Balde* confirmed the jurisdiction of a district court in response to an indictment structured virtually identically to Mack's, *id.* at 92. Like Mack's indictment, the indictment at issue in *Balde* specified the time and place of the defendant's conduct, described the status of the defendant that forbade the defendant from possessing a firearm, stated that the defendant "knowingly did possess" a firearm "in and affecting commerce," and then described the firearm and its transit in interstate commerce. *Id.* at 89. The indictment at issue in *Balde* did not allege that the defendant knew he held the status described. *Id.* That Mack's indictment for his firearms charge failed to allege that Mack knew he had previously been convicted of a felony "does not mean that the indictment fails to allege a federal offense in the sense that would speak to the district court's power to hear the case." *Id.* at 91. Mack's challenge to the district court's jurisdiction fails.

## B. Approach to re-cross examination, cross-examination, and voir dire

A "primary interest secured" by the Confrontation Clause of the Sixth Amendment is the right of cross-examination, which "is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (quoting *Douglas v. Alabama*, 389 U.S. 415, 418 (1965)). In addition, "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Matter of Kitchen*, 706 F.2d 1266, 1273 (2d Cir. 1983) ("Full cross-examination of the government's witnesses is an essential element of both the right to present defenses and the right to confront the government's evidence."). These rights, however, are not unlimited. The district court enjoys a "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). We reverse restrictions on cross-examination only when the district court has abused its "broad discretion." *United States v. James*, 712 F.3d 79, 103 (2d Cir. 2013) (quoting *United States v. Caracappa*, 614 F.3d 30, 42 (2d Cir. 2010)).

On appeal, Mack argues that the district court erred when it did not permit his counsel to re-cross-examine witnesses or to cross-examine witnesses on additional topics. But an inspection of the record reveals that the information Mack sought to elicit through re-cross-examination could have been gleaned during cross-examination, and the information Mack sought to elicit through further cross-examination would have presented irrelevant or duplicative testimony that would likely confuse the jury. Therefore, the district court's rulings in this regard were not an abuse of discretion.

Mack also argues that the district court erred by refusing to allow the defense to conduct voir dire of the government's proffered audio recording transcript for a conversation between Lucien and his cellmate. The district court did not permit voir dire because the transcript was an aid to the audio recording exhibit, rather than an exhibit itself, and the district court gave the jury a limiting instruction

regarding the transcript. Furthermore, Mack had the opportunity to cross-examine Lucien on the accuracy of the transcript. We do not believe the district court abused its discretion here, either.

Finally, Mack argues that the district court erred by admonishing trial counsel for repeatedly trying to ask questions over objections. "Our role . . . is not to determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid. Rather, we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial." *United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985) (citing *United States v. Robinson*, 635 F.2d 981, 984 (2d Cir. 1980)). When the district court admonished defense counsel, admittedly somewhat harshly, it provided reasons for doing so. The district court's admonishments typically came after defense counsel made the same objection after repeatedly being overruled. Even if the district court's behavior may have at times left something to be desired, it did not deny Mack a fair trial.

**C. Sufficiency of the evidence**

On appeal, Mack argues that the evidence is insufficient to support his conviction for conspiracy to murder Jernigan. In reviewing his challenge, we "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Allah*, 130 F.3d 33, 45 (2d Cir. 1997). "We must affirm the conviction so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson*, 180 F.3d 55, 74 (2d Cir.), *on reh'g*, 196 F.3d 383 (2d Cir. 1999).

The conspiracy to murder Jernigan arose between Mack and Lucien while they were incarcerated at the same facility. Although they were subject to a separation order, Mack and Lucien were able to meet several times. During one of these meetings, Lucien told Mack that he thought Jernigan might testify against Mack if Jernigan were in federal custody. Mack responded that "[I] got to do something about it. Like he got to go." Gov. App'x at 1281. Lucien understood that to mean "[Jernigan's] a dead man." Gov. App'x at 1282. Lucien told Mack, "I'm going see what I can do about it." Gov. App'x at 1282. In response, Mack laughed, which Lucien understood to signify an "agreement" because "[h]e ain't say no. So it was a go." Gov. App'x at 1284. During a visit a month later, Mack told Lucien that "he got a CD from his evidence that Charles Jernigan had said that he seen [Lucien] with the murder weapon," Gov. App'x at 1287, that a superseding indictment was coming, and that Lucien might be involved, Gov. App'x at 1294. Mack told Lucien that Jernigan is "getting risky," meaning "[d]angerous for the trial," and asked Lucien to "[g]et rid of him." Gov. App'x at 1298.

Lucien's first plan had been to get out of jail on bond so that he could kill Jernigan himself. He was not able to get out on bond, however, and turned to his cellmate for help. Lucien's cellmate told Lucien that "[h]is boy could kill [Jernigan]," and the cellmate arranged a meeting between Lucien

4

and his associate. Gov. App'x at 1303. Lucien's cellmate was working for the FBI, and the associate who met with Lucien was in fact an undercover agent. When Lucien met with the agent, he gave the agent Jernigan's home address, which he had gotten from Mack. Lucien also told the agent that Jernigan lived with his girlfriend and a daughter, and that any witnesses should be killed. Some time later, Lucien and Mack met again through a prison visit, and Lucien told Mack, "I sent my peoples, they came Friday." Gov. App'x at 1318. Lucien wanted Mack to "know everything's a go." *Id.* During this conversation, Mack confirmed the address that Lucien gave to the agent, asking Lucien "if the address is right." Gov. App'x at 1319.

From Lucien's testimony, the jury could have reasonably concluded that Mack instructed Lucien to kill Jernigan and attempted to facilitate Jernigan's murder by providing Lucien with his address. Lucien's testimony is sufficient to support a determination of Mack's guilt beyond a reasonable doubt.

On appeal, Mack raises three challenges beyond the content of Lucien's testimony. First, he argues that the evidence is insufficient because it consists solely of Lucien's testimony. However, it is "well established that a federal conviction may be supported 'by the uncorroborated testimony' of even a single accomplice witness 'if that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt.'" *United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006) (quoting *United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990)). We do not find Lucien's testimony to be incredible on its face. Second, Mack makes the related argument that Lucien's testimony was not corroborated. But even if this is true, "any lack of corroboration goes only to the weight of the evidence, not to its sufficiency. The weight is a matter for argument to the jury, not a ground for reversal on appeal." *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989) (citing *Compton v. Luckenbach Overseas Corp.*, 425 F.2d 1130, 1132 & n.2 (2d Cir. 1970)). Finally, Mack argues that Lucien is a felon who lied to the FBI and was indicted for false statements. Mack asks us to second-guess the jury's determination that Lucien's testimony was credible. We decline to do so. *See United States v. Baker*, 899 F.3d 123, 130 (2d Cir. 2018) (quoting *Florez*, 447 F.3d at 156).

For these reasons, Mack's sufficiency of the evidence challenge to his conviction of conspiracy to murder Jernigan fails.

**D. Suppression of Evidence**

The government obtained and presented to the jury three days of cell-site location information for Mack's cellphone. This information was obtained pursuant to a Stored Communications Act order on November 14, 2011. Pursuant to the Stored Communications Act, obtaining the order did not require a showing of probable cause. On appeal, Mack challenges the admission of this cell-site location information in light of the Supreme Court's recent decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018). "When considering an appeal stemming from a motion to suppress evidence, we

5

review legal conclusions de novo and findings of fact for clear error." *United States v. Zodhiates*, 901 F.3d 137, 143 (2d Cir. 2018).

In *Carpenter*, the Supreme Court held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through [cell-site location information]," 138 S. Ct. at 2217, and that as a result, the Fourth Amendment requires the government to obtain a warrant supported by probable cause before obtaining this type of record, *id.* at 2221. However, there is a "good faith" exception to this rule. "[W]hen the Government acts with an objectively reasonable good-faith belief that their conduct is lawful, the exclusionary rule does not apply. This exception covers searches conducted in objectively reasonable reliance on appellate precedent existing at the time of the search." *Zodhiates*, 901 F.3d at 143 (citations, modifications, and internal quotation marks omitted). In *Zodhiates*, we considered a similar factual scenario and concluded that "in 2011, prior to *Carpenter*, a warrant was not required for the cell records." *Id.* at 144. Although *Zodhiates* addressed information obtained under the Stored Communications Act's subpoena requirement rather than its order requirement, this is not a material distinction. *See United States v. Chambers*, 751 F. App'x 44, 46–47 (2d Cir. 2018) (applying *Zodhiates* to a case in which information was obtained pursuant to the Stored Communications Act's order requirement and concluding that the good faith exception applied and that suppression of the cell-site records at issue was not required). For these reasons, we conclude that although *Carpenter* does apply to the cell-site location information at issue in this case, the good-faith exception also applies, and this evidence did not need to be suppressed.

## CONCLUSION

We have reviewed Mack's remaining arguments and find them to be without merit. For the reasons set forth in both the accompanying opinion and this summary order, the judgment of conviction and sentence are AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk