21-2487-cr
*U.S. v. Smith*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT
### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand twenty-four.

PRESENT:     Steven J. Menashi,
                      Sarah A. L. Merriam,
                                *Circuit Judges,*
                      Stephen A. Vaden,
                                *Judge.*[*]

_____

UNITED STATES OF AMERICA,

      *Appellee,*

   v.                                                              No. 21-2487

FRANK SMITH, aka FRESH,

      *Defendant-Appellant.*[†]

_____

_____

[*] Judge Stephen A. Vaden of the United States Court of International Trade, sitting by designation.

[†] The Clerk of Court is directed to amend the caption as set forth above.

*For Appellee*:    JENNIFER SASSO (Jo Ann M. Navickas, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

*For Defendant-Appellant*:    LAWRENCE D. GERZOG, New York, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Block, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Frank Smith appeals from a judgment of conviction and sentence entered on September 29, 2021, by the United States District Court for the Eastern District of New York. After a jury trial, Smith was found guilty of one count of racketeering in violation of 18 U.S.C. §§ 1962(c) and 1963(a), two counts of murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1), and two counts of firearm-related murder in violation of 18 U.S.C. § 924(j)(1). The district court sentenced Smith to a total of life plus twenty years' imprisonment and a $500 special assessment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I**

First, Smith argues that the government presented insufficient evidence that he committed any acts related to the racketeering enterprise, Rival Impact, during the limitations period beginning June 22, 2011. He contends that although the jury found that three racketeering acts within the limitations period had been proven—racketeering acts one, four, and five—there was insufficient evidence that those acts were related to Rival Impact.

**A**

"We review a challenge to the sufficiency of the evidence *de novo*, though a defendant carries a heavy burden in making such a challenge." *United States v. White*, 7 F.4th 90, 98 (2d Cir. 2021) (internal quotation marks omitted). A "conviction must be affirmed if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Florez*, 447 F.3d 145, 154 (2d Cir. 2006) (internal quotation marks omitted). "In conducting our review, we consider the totality of the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *White*, 7 F.4th at 98 (internal quotation marks omitted).

To establish racketeering, the "government must prove both that an enterprise exists and that the conduct in furtherance of the enterprise comprises a pattern." *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010). To show a pattern, the government must prove "[a]t least two predicate acts" that are "related and amount to or pose a threat of continued criminal activity." *Id.* (internal quotation marks omitted). At least one predicate act must have been committed within the five-year limitations period. *See United States v. Wong*, 40 F.3d 1347, 1367 (2d Cir. 1994).

The predicate acts must be horizontally related and vertically related. *Burden*, 600 F.3d at 216. "Horizontal relatedness requires that the racketeering predicate acts be related to each other." *Id.* Vertical relatedness requires "that the acts [be] related to the enterprise" and is satisfied by showing "that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise." *Id.* "[B]oth the vertical and horizontal relationships are generally satisfied by linking each predicate act to the enterprise" because the "predicate crimes will share common goals … and common victims"

3

and "will draw their participants from the same pool of associates." *United States v. Daidone*, 471 F.3d 371, 376 (2d Cir. 2006).

**B**

The government presented sufficient evidence from which a rational jury could conclude that Smith committed acts related to Rival Impact during the limitations period. These include racketeering act one, heroin distribution conspiracy from January 2000 to January 2014; racketeering act four, possession of cocaine base and heroin with intent to distribute on August 20, 2011; and racketeering act five, possession of heroin with intent to distribute on September 5, 2011.

As to racketeering act one, Smith argues that there was "not a shred of evidence" connecting him to a Rival Impact-related drug conspiracy. Appellant's Br. 16. But the government did present such evidence. The government presented testimony from cooperating witnesses Gerald Salley and Nabiu Mansaray—longtime Rival Impact members—that Smith was involved in Rival Impact's drug distribution operations during the limitations period. For example, Salley testified that Smith supplied him and other Rival Impact members with heroin to sell until at least August 2011. Furthermore, Smith was arrested in August and September 2011 near the Mermaid Houses—Rival Impact's turf where members had for years cut, packaged, and sold drugs—in possession of distribution-quantity narcotics. And a law enforcement officer testified that he observed Smith associating with other Rival Impact members including Salley, Mansaray, and Michael Liburd throughout the summer of 2011.

Smith points to several pieces of evidence in the record that he contends undermine the inference that he was involved with a Rival Impact-related drug conspiracy. First, Mansaray denied that Smith was his "partner in crime" and agreed, when asked, that Smith "worked alone." App'x 98. But a reasonable inference from the testimony is that Smith—and other Rival Impact members— would sell drugs without other members present. Second, a police officer testified

that he associated Smith with the "West 33rd Crew." *Id.* at 131. But the Mermaid Houses were on West 33rd Street, and the indictment explains that Rival Impact was also known as the "33rd Street Crew." *Id.* at 32.

As to racketeering acts four and five, Smith argues that the government presented no evidence that the acts were related to Rival Impact because the arrests occurred at a distance from the Mermaid Houses. But the locations of the arrests support the jury's conclusion that the arrests were related to Rival Impact. The August arrest took place "just north" of the Mermaid Houses, Gov't App'x 121, and the September arrest was for a "hand-to-hand [drug] transaction" that took place "[a]cross the street" from the Mermaid Houses, App'x 46. And the government presented evidence that no one could sell drugs near the Mermaid Houses without Rival Impact's permission. So the jury could have concluded from the locations of the arrests alone that the arrests were related to Rival Impact.

Smith contends that the arresting officers "did not check the box to indicate a gang affiliation" when completing the arrest report forms and that this omission undercuts any connection between the arrests and Rival Impact. Appellant's Br. 12. But the officers' testimony indicates that they understood *gangs*, such as the Bloods, to be different from *crews*, such as Rival Impact. And they testified that they believed Smith *was* associated with a crew, which they explained to be a "[g]roup of individuals who lived within that vicinity who sold narcotics." App'x 131; *see also id.* at 50 ("I did not know [Smith] to be particularly associated with any gangs. His particular crew, yes; gangs, no.").

We conclude that, taking "the totality of the evidence in the light most favorable to the government," a rational jury could find that racketeering acts one, four, and five, were vertically related to Rival Impact. *White*, 7 F.4th at 98 (internal quotation marks omitted). The acts shared "common goals" and drew their "participants from the same pool of associates[—]those who are members and associates of" Rival Impact. *Daidone*, 471 F.3d at 376. And a jury could conclude that Smith was able to commit these acts "solely because of his position … or his

5

involvement in" Rival Impact. *Burden*, 600 F.3d at 216. Indeed, a jury could rationally conclude that Smith could *not* have sold drugs around the Mermaid Houses if he were not involved with Rival Impact.

## II

Second, Smith argues that the government committed a *Brady* violation by failing to disclose evidence that Michael Liburd—Smith's cousin and fellow Rival Impact member—participated in a different criminal enterprise during the limitations period. Smith contends that such evidence was material to his defense because the government presented evidence of Smith's association with Liburd to prove the existence of Rival Impact and Smith's participation in it. Thus, he argues, evidence of Liburd's participation in a different enterprise could have weakened the government's case against Smith.

"The basic rule of *Brady* is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). "To establish a *Brady* violation, a defendant must show (1) that the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *United States v. Paulino*, 445 F.3d 211, 224 (2d Cir. 2006) (internal quotation marks omitted). "[A] *Brady* violation occurs only where the government suppresses evidence that could reasonably have been taken to put the whole case in such a different light as to undermine confidence in the verdict." *Coppa*, 267 F.3d at 139 (internal quotation marks and alteration omitted).

Smith has not shown that the government committed a *Brady* violation because he does not identify any exculpatory evidence that was withheld or any prejudice that resulted. At trial, the government stipulated that Liburd was a member of the West End Enterprise between 2011 and 2017 and that Smith was not a member of that other enterprise. This stipulation allowed the defense to

6

advance any argument to the jury regarding the inference it should draw from Liburd's membership in a different enterprise—and Smith did advance such arguments.

In light of the government's stipulation at trial and Smith's failure to identify any exculpatory evidence that the government withheld, we conclude that Smith has not established a *Brady* violation.

### III

Third, Smith argues that the district court provided supplemental jury instructions that improperly shifted the burden of proof to the defendant as to the fifth element of murder in aid of racketeering. He argues that the jury's subsequent inconsistent verdict—finding Smith guilty of murder in aid of racketeering but making no finding as to racketeering acts seven and eight for the same murders—establishes that the error was prejudicial.

We review a challenge to a district court's jury instruction *de novo*. *United States v. Shamsideen*, 511 F.3d 340, 345 (2d Cir. 2008). "We will disturb a conviction only when it appears reasonably likely that the jury understood the instructions to allow it to convict on evidence insufficient to prove every element of the offense charged beyond a reasonable doubt." *United States v. Desimone*, 119 F.3d 217, 227 (2d Cir. 1997); *see Victor v. Nebraska*, 511 U.S. 1, 22 (1994). The challenged portion of the instruction cannot be considered in isolation, however, because "[t]he jury charge taken as a whole might have explained the proper allocation of burdens with sufficient clarity [such] that …the particular language challenged could not have been understood by a reasonable juror as shifting the burden of persuasion." *Francis v. Franklin*, 471 U.S. 307, 318-19 (1985).

Smith's argument fails because a reasonable jury would not have understood the instructions, taken as a whole, "to permit a guilty verdict based on less than proof beyond a reasonable doubt." *Shamsideen*, 511 F.3d at 345. Smith argues that the district court's instruction that "[i]f … you find that the defendant was not motivated at all by a desire to maintain or increase his position in the

7

enterprise, then you should find this element has not been proven," App'x 160, shifted the burden to the defendant to disprove that element. But taking the jury charge as a whole, it is not "reasonably likely" that a jury would have understood this sentence to shift the burden of proof. The district court stated three times immediately prior to that sentence—and many times in the original jury charge— that the government was required to establish each element beyond a reasonable doubt, including specifically the fifth murder in-aid-of-racketeering element. "We assume that a jury applies the instructions it is given." *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2d Cir. 1996).[1]

Smith contends that the verdict shows that the jury instruction was prejudicial. We disagree. The district court instructed the jury that, in order to find Smith guilty of racketeering, it was required to find at least two racketeering acts proven but was not required to make a finding as to all eight racketeering acts charged. The jury found acts one through six proven, but it made no finding as to acts seven and eight—which were the same two murders as the murder in aid of racketeering charges. Smith argues that this verdict is incongruous because in order to find that the charges for murder in aid of racketeering had been proven, the jury must have found that all the elements of racketeering acts seven and eight had been proven plus the fifth "purpose" element. But there is no reason to think that the challenged jury instruction had anything to do with this incongruity. The instruction related only to the additional element, which was not required to be proven for racketeering acts seven and eight. So any error in the challenged jury

---

[1] Furthermore, the challenged instruction correctly articulated the legal standard. The fifth element is proven when the desire to maintain or increase position in the enterprise was "among" the motives of the defendant, even if it was not his "sole or principal motive." *United States v. Farmer*, 583 F.3d 131, 143-44 (2d Cir. 2009) (internal quotation marks omitted). Thus, as the district court explained, only if the jury finds that the defendant "was not motivated at all by [this] desire" should it find the element not proven. App'x 160.

instruction would have no bearing on the jury's consideration of the racketeering acts.

Accordingly, we see no error in the district court's supplemental jury instruction.

**IV**

Fourth, Smith argues that his sentence was procedurally unreasonable because the district court erroneously believed that murder in aid of racketeering carries a mandatory minimum sentence of life imprisonment.

Murder in-aid-of racketeering is punishable "by death or life imprisonment, or a fine under this title, or both." 18 U.S.C. § 1959(a)(1). Smith argues that the plain text of the statute permits the district court to impose a fine instead of death or life imprisonment. Yet the district court stated that it "do[es]n't think [it] ha[s] discretion" to depart from a minimum sentence of life imprisonment by imposing only a fine. App'x 172.

We have previously held that § 1959(a)(1) does "carr[y] a mandatory minimum sentence of life in prison." *United States v. James*, 239 F.3d 120, 127 (2d Cir. 2000). In *James*, we recognized that the text of the statute presented some "ambiguity." *Id.* at 126. However, we saw "no basis for concluding that Congress intended the unlikely result that … a judge was free to reject a death sentence or life imprisonment for a defendant convicted [of murder in-aid-of racketeering], but only by sentencing that defendant to a fine without prison time." *Id.* at 127. Our decision in *James* resolves Smith's objection, and we therefore see no procedural error.

\*　　\*　　\*

We have considered Smith's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court